Wagner-Taylor Company, Appellant, *v.* McDowell et al.

Argued October 9, 1939. 

 Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and
HIRT, JJ. 

*Jerome Bennett,* with him *Henry Wessel, Jr.,* and
*Charles J. Weiss,* for appellant.

*Peter P. Zion,* with him *Albert H. Friedman,* for
appellee.

OPINION BY STADTFELD, J., November 17, 1939:

The plaintiff sued the defendant in assumpsit and obtained a judgment on August 21, 1934. A writ of attachment sur judgment followed on August 11, 1937, and the Fidelity-Philadelphia Trust Company, Executor and Trustee of the Estate of C. H. Boley, deceased, was summoned as garnishee. Interrogatories were filed and answers thereto submitted by the garnishee.

The answers disclosed that McDowell, defendant, had brought suit against C. H. Boley Company, a Pennsylvania Corporation and one of three stockholders, the Fidelity-Philadelphia Trust Company, Executor and Trustee of the Estate of C. H. Boley, deceased.

The suit was based upon the liability of the deceased as a stockholder of C. H. Boley Company, for the salary due Samuel McDowell by C. H. Boley Company, under the authority of Section 514 of the Business Corporation Law of 1933, which reads as follows: "Liability of Shareholders.—A. A shareholder of a business corporation shall not be personally liable for any debt or liability of the corporation, except salaries and wages due and owing to its laborers and employes, for services rendered to the corporation. In such event, every shareholder shall be personally liable in an amount equal to the value of the shares of the corporation owned by him, but no shareholder shall be so liable unless suit for the collection of such salaries and wages shall be brought against him within six months after the same shall become due. The term value, as used in this subsection, shall mean, in the case of shares with par value, the aggregate par value of such shares, and, in the case of shares without par value, the consideration received by the corporation on the original issue of such shares."

Judgment was entered in the sum of $1,840.25 in favor of Samuel McDowell. The defendant filed its motion to quash the writ of attachment under authority of Section 5 of the Act of April 15, 1845, P. L. 459, which provides as follows: "That the wages of any laborers, or the salary of any person in public or private employment shall not be liable to attachment in the hands of the employer."

The court below, McDevitt, P. J., quashed the writ. From that order, this appeal was taken.

The question involved in this appeal is clearly stated

in the opinion of the court below as follows: "The question therefore raised is whether the amount due an employee for wages by the stockholders of a corporation, as a result of the statutory liability imposed upon such stockholders by the Business Corporation Act of 1933, is exempt from attachment. It is perfectly true that McDowell was the employee of the corporation, but the stockholders constitute the corporation, and since the Act of Assembly has identified the stockholders as the guarantors of wages or compensation due employees, it is difficult for this court to recognize a distinction in the origin of funds coming from the corporation as a legal entity."

Appellant relies upon the principle as stated in some of the cases that an exemption must receive a strict construction, and that the money attached in the instant writ not being *"in the hands of the employer"* is subject to attachment. Without questioning this principle, we feel that the Act of Assembly exempting wages from attachment, should not be construed so as to defeat the manifest intention of the legislature.

Quoting from the opinion by ALESSANDRONI, J., in *McDowell v. C. H. Boley Co. et al.,* 34 D. & C. 307, on p. 312: "The provisions of section 73 of the Stock Corporation Law of May 24, 1923, N. Y. Laws ch. 787, under which these cases were decided, are similar to those of section 514 of the Business Corporation Law, which, as yet, has not been the subject of pertinent judicial interpretation. *It was the obvious intent of the legislature to afford wage earners relief in the event that their corporate employer was unable to pay their salaries,* whether because of actual bankruptcy or other financial difficulty . . . . . ." (Italics supplied.)

It is clear from a reading of the Act imposing this liability upon stockholders, that the Legislature, in its policy to protect laborers and wage earners, created an additional source from which employes of a corporation

might obtain payment of their wages in the event the corporate employer failed to pay them.

The moneys attached by the appellant herein are admittedly due the appellee, McDowell, as wages or salary. The sole question before the court, therefore, is whether or not in the instant case, these wages due the appellee, McDowell, by the stockholder, are exempt from attachment.

In interpreting the Act of 1845, the courts have been uniform in extending its provisions to protect and assist the wage earner in obtaining the fruits of his labor without interference from creditors.

In *Commonwealth of Pennsylvania ex rel. v. Peterson et al.*, 100 Pa. Superior Ct. 600, in an opinion by Judge CUNNINGHAM, it was stated (pp. 604, 605) : "The public policy supporting our legislative exemption of wages from execution is to secure to the workman and his family the fruits of his labor, in order that they may go to supply their wants. The families of wage earners are as truly beneficiaries of this policy as are the laborers themselves: *Smith v. Brooke*, 49 Pa. 147; *Firmstone v. Mack*, ibid. 387."

In *Firmstone v. Mack*, 49 Pa. 387, it was held that this exemption might not be waived by the wage earner.

It is, therefore, evident that wherever possible the courts will permit a wage earner to obtain his wages or salary despite the demands or claims of his creditors.

Appellant contends that the exemption laws should be given a strict construction. In line with this argument, it contends that the wages or salary due an employe are exempt only in the hands of the employer, and that inasmuch as the Fidelity-Philadelphia Trust Company, executor and trustee of the estate of Conrad H. Boley, deceased, garnishee herein, was not the employer of this defendant, the moneys due by it are not exempt under the Act of 1845.

If such a construction is to be placed upon the Act

of 1845, it would defeat the evident purpose of the Act of 1933, which is to assure payment to a workman or employe of a corporation of the wages or salary due him. The liability of a stockholder is limited to *wages and salary* due employes of the corporation which are unpaid.

We believe that the words as set forth in the Act of 1845, "in the hands of the employer," are placed there solely to limit the exemption to those cases only in which the employe has not as yet received his wages or they have not come under his control. If those words were not in the statute a workman might obtain payment of his wages, deposit the same in his bank account, and contend that the moneys so deposited were exempt from attachment by the creditor by reason of the provisions of the Act of 1845.

In *Wartella v. Osick,* 108 Pa. Superior Ct. 589, 165 A. 660, it was held that when payments under the Workmen's Compensation Act are paid into the hands of the claimant, the exemption from attachment ceases.

In the instant case, however, the wages due McDowell have never reached his hands, nor have they come under his control.

By the operation of the Act of 1933, the stockholders are, in effect, resorted to as employers of the wage earners in the corporate employ. Where it is necessary to meet the ends of justice, a court will not hesitate to treat a corporation and the individuals owning its shares as identical: *Markovitz et al. v. Markovitz et al.,* 336 Pa. 122, 8 A. (2d) 36; *Tucker v. Binenstock,* 310 Pa. 254, 165 A. 247.

It follows that under the Act of 1933, in making a stockholder liable to a wage earner, the Legislature has gone beyond the theory of the corporate entity and for that purpose has treated a corporation and the individuals owning its stock as identical.

Our courts have held that under such statutes, the

liability of the stockholder is contractual (See *Blair v. Kingston*, 64 Pa. Superior Ct. 506; *Squire v. Fridenberg*, 126 Pa. Superior Ct. 508, 191 A. 631). Where liability is that of employer to employe, then to that extent it must follow that the relationship of employer and employe has been assumed and exists. A stockholder having entered into a contractual relationship with the employe, that relationship by implication can only be on the basis of employer and employe to the limited extent provided by the Act. If, therefore, for the purpose of enabling the wage earner to obtain his wages, the stockholder is considered the employer, the wages due McDowell are still "in the hands of the employer."

In *Blair v. Kingston*, supra, we said, on p. 509: *"Under similar statutes the liability of stockholders has been held to be contractual: Aultman's App.*, 98 Pa. 505, 515; *Cushing v. Perot*, 175 Pa. 66, 73, and analogous to a guaranty; *Means' App.*, 85 Pa. 75, 79; *Patterson v. Wyoming Mfg. Co.*, 40 Pa. 117, 122. *The stockholders, in accepting their stock must be presumed to have agreed to all the conditions imposed by the statute, which relieves them from general liability but imposes this special liability for the payment of wage claims in the event of insolvency."* (Italics supplied.)

In *Squire v. Fridenberg*, supra, President Judge Keller defines the nature of a stockholder's liability imposed by statute, at pp. 516, 517: "The nature of an action brought to enforce the individual liability imposed by statute on a stockholder of a corporation was well expressed by Chief Justice Sharswood in *Aultman's Appeal*, 98 Pa. 505, 512, 513, as follows: 'It has been earnestly contended that the individual liability thus imposed on the stockholders is a penalty, and that the courts of one state will not enforce the penal laws of another. This is undoubtedly so; but was this liability thus provided for in any sense a penalty? The defendants became owners of their stock either by

original subscription or by assignment from subscribers, and *assumed voluntarily all the obligations imposed upon them as owners.* It was a contract, express or implied, to pay not only for the stock owned or subscribed, but so much in addition as would be necessary for the purpose of securing the creditors of the company. This contract could be enforced in any state in which the defendants were amenable to the process of the courts.' *The liability sought to be enforced is contractual. Cushing v. Perot,* 175 Pa. 66, 74, 34 A. 447; *Ball v. Anderson,* 196 Pa. 86, 88, 46 A. 366." (Italics supplied.)

The decision in *Integrity Trust Co. v. Taylor,* 312 Pa. 3, 167 A. 363, is, in some respects, analogous to the instant case. In that case, the defendant, Taylor, had been employed under a written contract with one Zimmerman to manage a chain of theatres for a stipulated term. Zimmerman, the employer, had sold his theatres to the Stanley Company of America under an agreement whereby it assumed all of the outstanding contracts entered into by Zimmerman, one of which was the contract with Taylor. The Stanley Company of America discharged Taylor. He brought suit under his contract and recovered a judgment. The Integrity Trust Company, a creditor of Taylor, obtained judgment against him and issued an attachment execution under the said judgment, summoning the Stanley Company of America as garnishee. Interrogatories and answers were filed. A motion to dissolve the attachment was filed by the defendant on the ground that the moneys due him under the contract were exempt by the Act of 1845.

It was urged that the moneys due and payable under the contract to Taylor were not salary or wages earned by the defendant in such a manner as to be exempt from attachment under the provisions of the Act of 1845. The Stanley Company of America had never

acted as the employer of Taylor, although he had always held himself in readiness to perform under the contract. It was held, in a per curiam opinion that "the sums payable to defendant are salary and are exempt from attachment."

In the instant case, the sums due McDowell by the garnishee are salary and therefore are exempt from attachment. The Stanley Company of America in the Taylor case became liable as employer by contract, so likewise the stockholders of the C. H. Boley Company became liable by implied contract as employers of McDowell.

The cases cited by appellant are readily distinguishable from the instant case. We believe that the case was properly disposed of by the court below.

The assignment of error is overruled and the order of the court below is affirmed. Costs to be paid by appellant.

DISSENTING OPINION BY KELLER, P. J., November 21, 1939:

The Act of April 15, 1845, P. L. 459, was enacted to extend the jurisdiction of aldermen and justices of the peace, so as to authorize them to issue attachment execution process upon judgments recovered before them and remaining unsatisfied, agreeably to the provisions of sections 32 to 38 inclusive of the Act of June 16, 1836, P. L. 755, relating to executions in the courts of common pleas, which provides for the levying of execution by attachment upon stock, debts and deposits of money, etc. As the jurisdiction of aldermen and justices in civil cases did not exceed $100[1] at that time, the attachment execution process under the Act of 1845, was likewise limited.

The Act of 1845 contains six sections, every one of which clearly relates to writs of attachment issued by

---

[1] Increased to $300 by the Act of July 7, 1879, P. L. 194.

an alderman or justice of the peace. The writ is returnable, just as in actions brought before an alderman or justice, in not less than four nor more than eight days; interrogatories are to be filed with the *magistrate* and the amendment to section 3, (Act of June 29, 1923, P. L. 934) allows counsel fees to garnishees in attachments issued by aldermen or justices of the peace. Sections 5 and 6 provide as follows:

"Section 5. That if the garnishee in his answers, admit that there is in his possession or control property of the defendant liable under said act to attachment, then said magistrate may enter judgment specially, to be levied out of the effects in the hands of the garnishee, or so much of the same as may be necessary to pay the debt and costs: *Provided however,* That the wages of any laborers, or the salary of any person in public or private employment, shall not be liable to attachment in the hands of the employer.

"Section 6. The plaintiff, the defendant, or the garnishee in the attachment, may appeal from the judgment of the alderman or justice of the peace to the next term of the court of common pleas, on complying with the provisions of the laws regulating appeals in other cases: *Provided,* That the fees allowed justices, and alderman, and constables, under this act, shall be the same as allowed by the general fee bill for similar services in other cases."

Notwithstanding the clear expression in the Act that its purpose was to extend the jurisdiction of aldermen and justices of the peace, so as to embrace attachments in execution, it was ruled by judicial dictum in *Catlin v. Ensign,* 29 Pa. 264,[2] that the *proviso* in section 5 above quoted, "Provided, however, That the wages of any laborers or the salary of any person in public or

---

[2] *Heebner v. Chave,* 5 Pa. 115, the first case in which the Act of 1845 was considered by the Supreme Court dealt with an attachment execution issued by a justice of the peace.

private employment, shall not be liable to attachment in the hands of the employer," applies to all judgments, whether entered in the common pleas or on the docket of a justice of the peace; and the ruling has been followed ever since.

Clearly the proviso to the Act of 1845 was one of the preferential provisions in behalf of laborers, which the General Assembly in many statutes has enacted for their benefit, limiting the preference to $100 or $200 or amounts less than the exemption allowed by law. For example, see Act of April 9, 1872, P. L. 47, and its amendments, and the long line of special acts recited in the Historical Note to 43 PS sec. 221, p. 97, enacted from 1849 to 1862, in most of which the limit was $100. We mention this to show that the legislature in enacting the proviso was dealing with the limited sums ordinarily due laborers as wages or salary. For this reason it should not be extended to claims for large sums sought to be recovered from persons who do not come strictly within the proviso used in the Act of 1845, to wit, "wages of any laborer or the salary of any person in public or private employment, shall not be liable to attachment *in the hands of the employer*."

In no sense can it be said in this case that Conrad H. Boley, or his executor, was the *employer* of Samuel McDowell, the defendant in the attachment execution. McDowell was manager of a corporation, C. H. Boley Company. The corporation was his employer. He claimed that the company owed him $2300 salary. Conrad H. Boley had been a stockholder of the corporation. On his death, the executor of his will succeeded to his ownership of the stock. McDowell, not having been paid the salary due him by his corporate employer, brought an action against the executor of Boley's will, under section 514 of the Business Corporation Law of May 5, 1933, P. L. 364, as amended by Act of July 17, 1935, P. L. 1123, which imposed *liability* on stock-

holders of business corporations for salaries and wages due and owing its laborers and employees, to an amount equal to the value of the shares of the corporation owned by the shareholder, and recovered a judgment for $1840.25. But while the Act imposed liability upon the shareholder, it did not make him the *employer* of the laborer or manager. The liability was imposed upon him as a stockholder of the employer.

A somewhat similar liability is imposed on stockholders of certain banks, to pay depositors, on the failure of the bank to meet its obligations, up to the par value of the stock held by them; but the imposition of such liability on them as shareholders does not constitute them the *bank,* whose stock they owned. So here, though the shareholder may be liable, because of the statute, to pay wages and salaries due certain laborers and employees by their employer, the corporation, the statute does not make the stockholder their employer, but only charges him with a secondary liability because their employer, the corporation, failed to pay the wages and salaries due the defendant by it. The money is due the employee by the stockholder not because the latter is his employer, but because of the statutory liability placed on the stockholder to pay the debt due by the corporate employer to its employee.

The proviso in the Act of 1845, even if it be applied to a judgment of this kind and amount obtained in the common pleas, should not be extended beyond its plain language. The garnishee in this case never was the employer of McDowell, and hence does not come within the provision excepting from attachment wages or salary "in the hands of the employer."

I would reverse the order quashing the attachment and award a procedendo.

Judge CUNNINGHAM concurs in this dissent.