## Union Trust Co. v. Altman

*R. E. Umbel*, for plaintiff.

*J. K. Spurgeon*, for defendant.

*D. W. Henderson*, for garnishee.

DUMBAULD, P. J., March 4, 1941.—On or about December 1, 1939, Harry W. Altman entered into an agreement with the Uniontown Hospital Association, under the terms of which he undertook "to personally supervise as architect the erection and construction of an X-ray addition to the Uniontown Hospital building." For these services he was to receive one percent of the contract price of the general construction, wiring contract, and elevator installation.

On July 27, 1940, the Uniontown Hospital Association was indebted to Harry W. Altman, architect, on account of services rendered under this contract, in the sum of $150. The work was not then completed. On that date plaintiff caused an attachment execution to issue wherein

and whereby it sought to attach the sum due Altman. The Hospital Association, garnishee, admitted the indebtedness and the substance of the contract under which the indebtedness arose.

Plaintiff likewise admits in its pleadings the substance of the contract under which it seeks to attach the fund in question.

Defendant, Harry W. Altman, contends that his compensation under this agreement is protected from attachment by the Act of April 15, 1845, P. L. 459.

Section 5 of that act contains the following proviso:

"*Provided however*, That the wages of any laborers, or the salary of any person in public or private employment, shall not be liable to attachment in the hands of the employer."

Our only question is whether the commission earned in this case is within the language of the act.

We are constrained to decide that the sum due Altman must be classified as salary and therefore not subject to attachment.

The petition to dissolve, the answer of plaintiff, and the answer of the garnishee to interrogatories all describe the agreement as one for compensation for personal services to be rendered by employe to employer. The fact that Altman is an architect and that as such he engaged to do personal services in supervision can make no difference. The relationship is that of employer and employe. The pleadings therefore present prima facie a case in which a creditor is seeking to appropriate in satisfaction of its claims the commissions due from the employer to the employe. The commissions constitute the compensation of the employe for personal services performed for his employer under the agreement between them. It was the obvious purpose of the act in question to enable persons in public or private employment to receive from their employer compensation for their personal services without hindrance from their creditors. The miner who is paid by the ton, the mechanic who is paid by the piece,

and the clerk or salesman who is paid by commissions on his sales are as much within its protection as if they were paid by the day, week, month, or year. It is what the employer owes his employe, for personal services rendered in that relation, which is exempt from attachment in the hands of the employer and it matters not whether it is called wages or salary: Hamberger v. Marcus, Corr's Appeal, 157 Pa. 133; Danziger v. Ferber, 272 Pa. 193.

We adopt the language and reasoning of Brown, J., of the Court of Common Pleas of Allegheny County, where he says, in Central Trust Company v. Rieger et al., 25 Dist. R. 1074:

"Plaintiff's answer substantially admits the allegation of defendant's employment under the agreement, but denies that the compensation therefor is exempt from attachment under section 5 of the Act of April 15, 1845, P. L. 459: 'The wages of any laborer, or the salary of any person in public or private employment, shall not be liable to attachment in the hands of the employer.'

"This section 5 is interpreted, not narrowly, but broadly, in the interest of both employee and employer. It protects the salary of a chorister (Catlin v. Ensign, 29 Pa. 264), and a salesman's commission, given him by his employer as compensation for his individual efforts in making sales: Hamberger v. Marcus, 157 Pa. 133.

"In Little v. Balliette, 9 Pa. Superior Ct. 411, it is said: 'The Act of 1845 is frequently spoken of, for convenience sake, as an exemption law, . . . but more broadly it is a law forbidding the taking of jurisdiction by attachment over the subject-matter. It was not intended to confer a personal privilege upon laborers merely, but was enacted for the protection of their employers as well. For this reason . . . it was held that the laborer could not waive its provisions, and thereby subject his employer to the liability, to the expense and annoyance of attachments.'

"Salary, wages, commissions, recompense, compensation—as applied to services rendered or to be rendered by an employee to an employer — are interchangeable

terms having the same meaning. It would be juggling with words to hold the contrary. For these words have a natural, ordinary, well understood meaning in trade and business. As said in Hamberger v. Marcus, 157 Pa. 133: 'It is what the employer owes his employee for personal services rendered in that relation which is exempt from attachment in the hands of the employer, and it matters not whether it is called wages or salary.' In Com. ex rel. Wolfe v. Butler, 99 Pa. 535, Chief Justice Sharswood, speaking for this court, said: 'The truth is, and lexicographers seem to hold, that if there is any difference in the popular sense between "salary" and "wages," it is only in the application of them to more or less honorable services. A farmer pays his farm hands, in common speech, "wages," whether by the day, the week, the harvest or the year. If for any reason he has occasion to employ an overseer, his compensation, no matter how measured, is called a "salary." An iron master pays his workmen wages; his manager receives a salary. A merchant pays wages to his servant who sweeps the floor, makes the fire and runs his errands, but he compensates his salesman or clerk by a salary. How can it make any difference in what way the compensation is ascertained?'

"This brings us to the written agreement of Sept. 21, 1914, between the Syria Improvement Association (employer) and Charles J. Rieger (employee). As expressed in the agreement, the association had entered into a contract with Huehl, Schmidt & Holmes, architects, of the City of Chicago, 'to make all necessary sketches, plans, detail drawings and specifications . . . and . . . do all necessary work to be done by architects . . . for the erection and completion of a Shrine Temple Building, . . . including furniture, equipment, lighting, heating, . . .' at a cost not to exceed $400,000. Then follows this provision in the agreement: 'Said party of the second part, Charles J. Rieger, shall superintend and supervise the construction of the building in accordance with the plans and specifications and detail drawings prepared by

Huehl, Schmidt & Holmes, and shall make estimates from time to time of the amount and value of the work done on said building by the contractors, for the purpose of making payments to said contractors according to the terms of their contracts.' And this provision: 'In consideration of such services on the part of the party of the second part, the party of the first part hereby agrees to pay the party of the second part an amount or sum equal to 2/6 of 6 percent. of the aggregate amount of all the contracts for the erection and completion of said building.'

"If, instead of this quoted provision as to compensation for services, the contract had read, 'In consideration of such services on the part of the party of the second part, the party of the first part agrees to pay the party of the second part $10 per day,' could there be any doubt that such sum was a wage rate or salary or recompense? If there could not be any doubt as to that, there can be none as to the 2 per cent. compensation mentioned in the agreement.

"Rieger's employment demanded skill and experience of a high order, and for that he was to be paid the compensation named in the contract. Instead of that employment, he might have been employed as foreman or superintendent over a gang of laborers or a larger body of workers in any kind of construction work. The difference in employment, whether requiring a high degree of skill (such as that of superintendent or supervising architect) or a lower degree of ability (such as foreman or superintendent over ordinary construction work), makes no difference in the application of the exemption allowed by the Act of 1845.

"The very nature of Rieger's employment brings him within the exemption terms of the Act of 1845.

"Rule absolute, and attachment dissolved and set aside, so far as the same affects the moneys due or to become due to Charles J. Rieger from the Syria Improvement Association under the agreement of Sept. 21, 1914."

Both in fact and in law, this case is exactly like the one which we are called upon to decide. We can do no better than to make an order similar to the one made in that case.

*Order*

Now, March 4, 1941, the rule heretofore granted to show cause why the attachment in this case should not be dissolved and set aside be and the same hereby is made absolute and the attachment is dissolved and set aside so far as the same affects the moneys due and to become due to Harry W. Altman from the Uniontown Hospital Association under the agreement of December 1, 1939.