## Bell, Appellant, *v.* Roberts et al.

470

Argued September 30, 1942.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*Joseph M. Price*, with him *John W. Lord, Jr.*, Special Deputy Attorney General, *Orville Brown*, Deputy Attorney General, and *Claude T. Reno*, Attorney General, for appellant.

*John M. Smith, Jr.*, with him *Seth W. Watson*, for appellee.

OPINION BY CUNNINGHAM, J., November 11, 1942:

This appeal is from an order of the court below dissolving an attachment issued against the Philadelphia Transportation Company for the purpose of reaching in its hands, as garnishee, a fund payable to Hugh Roberts, Esq., the defendant and a member of the Philadelphia Bar, as an attorney's fee allowed him by order of the United States District Court for legal services connected with the reorganization of the garnishee, the former Philadelphia Rapid Transit Company.

The plaintiff, John C. Bell, Jr., as Secretary of Banking of the Commonwealth of Pennsylvania and Receiver of Aldine Trust Co., is the present owner of a judgment entered in the Court of Common Pleas No. 4 of Philadelphia County on January 29, 1940, upon a transcript of a judgment originally entered April 14, 1934, in the Common Pleas of Delaware County, by confession, on defendant's note for $3,000, executed March 30, 1925, to the order of Lancaster Avenue Title and Trust Company. Thereafter the latter was merged with the Aldine Trust Company, which, in turn, was taken over by the then Secretary of Banking in 1930.

The fundamental question of law involved upon this appeal is whether certain monies admittedly in the hands of the garnishee, Philadelphia Transportation Company, and due from it to the defendant, Roberts, are, as contended by him, exempt from attachment within the intendment of the proviso contained in Section 5 of the Act of April 15, 1845, P. L. 459, 42 PS §886, which is applicable to the present proceeding, (*Hollander v. Kressman et al.,* 143 Pa. Superior Ct. 32, 35, 17 A. 2d 669), and reads: "Provided, however, that the wages of any laborers, or the salary of any person in public or private employment, shall not be liable to attachment in the hands of the employer."

· Two closely related subsidiary propositions are involved: (1) Whether the money in the hands of the garnishee falls within the legislative designation of monies exempt from attachment; and (2) whether the garnishee may properly be considered the employer of the defendant.

The record discloses this history of the creation and custody of the fund of $2,500, out of which the plaintiff seeks to collect the principal sum of $1,607.33, the amount of damages assessed under the judgment. In a proceeding in the District Court of the United States for the Eastern District of Pennsylvania for the re-

organization under the Bankruptcy Act of the Philadelphia Rapid Transit Company, Roberts was allowed the sum of $2,500 as compensation for services rendered by him to certain employees, creditors and stockholders who were parties in interest in the proceeding. After the reorganization plan had been confirmed by the court and consummated by formation of the Philadelphia Transportation Company, the garnishee herein, by consolidation and merger of the debtor, Philadelphia Rapid Transit Company, and sixty-four other companies, with the result that the garnishee acquired all the property and business of the constituent corporations, the District Court, on January 12, 1940, awarded a fee of $2,500 to Roberts for the legal services rendered by him in connection with the reorganization. The award was made under the authority of the Federal Bankruptcy Act of July 1, 1898, c. 541, §243, as amended June 22, 1938, c. 575, §1, 52 Stat. 900, 11 U. S. C. A. §643, which makes the following provision with reference to compensation of attorneys in reorganization proceedings: "The judge may allow reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred by creditors and stockholders, and the attorneys for any of them, in connection with the submission by them of suggestions for a plan or of proposals in the form of plans, or in connection with objections by them to the confirmation of a plan, or in connection with the administration of the estate. In fixing any such allowances, the judge shall give consideration only to the services which contributed to the plan confirmed or to the refusal of confirmation of a plan, or which were beneficial in the administration of the estate, and to the proper costs and expenses incidental thereto."

On February 2, 1940, the plaintiff petitioned the District Court for leave to issue an attachment execution out of the Court of Common Pleas No. 4 of Philadelphia County upon his judgment against Roberts in order

to attach the fund which the District Court had directed the Philadelphia Transportation Company to pay the defendant. The District Court, after pointing out that the allowance had been made not merely because Roberts had represented certain clients in the proceeding, but also because his "compensable acts" were "an integral part of the judicial process which effected the statutory objective," dismissed the petition upon the theory the money was, in effect, in *custodia legis.*

Upon appeal to the United States Circuit Court of Appeals for the Third Circuit, that tribunal disagreed with the reasoning of the District Court but directed that the petition be dismissed "for want of jurisdiction," remarking: "When the reorganization was consummated, the protecting hand of the bankruptcy court was withdrawn from the new company and its assets." Neither federal court undertook to decide whether the sum payable to Roberts for his legal services was subject to attachment under the laws of Pennsylvania. In concluding its opinion the Circuit Court said: "If, as Roberts urges, that allowance is to be considered salary and, therefore, exempt from attachment under Section 5 of the Act of April 15, 1845, P. L. 459, (42 PS §886) he will have opportunity to claim his exemption in the attachment proceeding in the state court by rule to dissolve or other appropriate action."

Following the filing of the opinion of the Circuit Court, the attachment execution with which we are now concerned was served upon the Philadelphia Transportation Company, named as garnishee therein.

In answering the interrogatories addressed to it, the garnishee reviewed the proceedings in the federal courts, averred the allowance of $2,500 is the only amount which the garnishee owes the defendant, and stated the defendant contended this money was exempt from attachment.

In June, 1940, Roberts obtained rules: (1) To open

the judgment; (2) to strike it off; and (3) to dissolve the attachment.

In the opinion filed by FINLETTER, P. J., supporting his order dated December 6, 1941, making absolute the rule to dissolve the attachment, it is stated that the question whether or not the attachment should be dissolved was the only question the court below was then asked to pass upon. The basis for the order appealed from was thus clearly stated by the learned president judge of the court below:

"The act provides: 'The wages of any laborers or the salary of any person in public or private employment shall not be liable to attachment in the hands of the employer.'

"The obvious purpose of the act is to protect earnings produced by physical or intellectual effort. On first impression the language used, 'wages' and 'salary,' would seem to involve the idea of periodical payments. Wages usually mean daily compensation, salary, payment at longer intervals, monthly or annually, etc. But such a narrow view should yield to the main purpose of the act, that is to protect compensation for labor. And intellectual labor is quite as worthy of protection as manual labor ......

"We think the work of the lawyer is within the protection of the statute.

"The idea involved in wages and salaries is compensation for personal services as distinguished from profits realized in commercial dealings, or returns from investments or capital or returns from the labor of others."

These conclusions are supported by our appellate decisions. The leading cases were thus reviewed by Mr. Justice SADLER in *McCloskey et al. v. Northdale Woolen Mills et al.*, 296 Pa. 265, 269, 145 A. 846:

"The legislative class intended to be protected by the Act of 1845 has also been the subject of frequent consideration. Whether the compensation be called 'wages'

or 'salary' is immaterial: *Com. ex rel. Wolfe v. Butler,* 99 Pa. 535. It was intended to cover amounts due for mental or manual labor expended: *Watson Co. v. Christ,* 62 Pa. Superior Ct. 604; *Hartman v. Mitzel,* 8 Pa. Superior Ct. 22. It included wages due (*Catlin v. Ensign,* 29 Pa. 264), though the employee was compelled to pay expenses from the sum received (*Pa. Coal Co. v. Costello,* 33 Pa. 241), as well as commissions collectible for services performed, such as those incurred by the ordinary salesman (*Hamberger v. Marcus,* 157 Pa. 133), or wages and commissions (*Watson Co. v. Christ,* supra.) and cases where a bonus was added if employment was continued for a definite period: *Danziger v. Ferber,* 272 Pa. 193. So it has been held that the class covers the ordinary commission merchant, who receives goods into his possession for sale, receiving a percentage for his personal service, and such compensation is protected by the act: *Hamberger v. Marcus,* supra, page 139."

Again, in *Danziger v. Ferber,* 272 Pa. 193, 116 A. 516, the Supreme Court, in construing these terms, stressed the requirement that the money be due for *personal* services and that there be no element of direct profit on the labor of others. Similarly in *The Ellis B. & L. Assn. v. Gross et al.,* 36 D. & C. 258, 260, involving renewal commissions due a life insurance salesman which were held not attachable, it was stated: "Whether the method of compensation be 'wages' or 'commissions' or both is not controlling. The question turns on what the compensation is payable for. If it is payable for personal service rendered, it is within the protection of the statute and not attachable."

In *Bair v. Newgeon et al.,* 40 D. & C. 245, it was indicated that an attorney's fee was within the protection of the Act of 1845. Although neither of our appellate courts has, within our knowledge, passed upon the exact question now before us, we agree with the court

below in holding upon this branch of the case that the fund in question was awarded to Roberts in payment for his personal professional labors and is therefore within the exemption of the statute.

This conclusion is in harmony with the legislative policy expressed in the exemption proviso of the statute; namely, the preservation for employees and their families of the fruits of mental or manual labor in order that their earnings may go to supply their daily needs without hindrance from their creditors. That policy is also exemplified by the appellate decisions holding that the exemption may not be waived. See *Firmstone et al. v. Mack,* 49 Pa. 387; *Morris Box Board Co. v. Rossiter,* 30 Pa. Superior Ct. 23.

On the second branch of this case we are also in accord with the holding of the court below that the effect of the Bankruptcy Act and the order of the District Court thereunder was to make the Philadelphia Transportation Company Roberts' employer within the intendment of our Act of 1845.

Obviously, the legislative purpose was to exempt compensation for personal services only so long as it had not come into the possession, or under the control, of the employee. Cf. *Wartella v. Osick,* 108 Pa. Superior Ct. 589, 165 A. 660.

Roberts was originally retained to represent stockholders, creditors and employees of the former Philadelphia Rapid Transit Company. By the express provisions of the above quoted section of the Bankruptcy Act, as here applicable, the District Court was authorized to "allow reasonable compensation for services rendered" by, inter alia, attorneys for creditors and stockholders in connection with the submission of proposals "in the form of plans," giving consideration only to the services which contributed to the adoption of the plan, or its rejection, or were beneficial in the administration of the estate. As we have seen the District

Court found that Roberts "was allowed a fee of $2,500 because he contributed to the result that was the sole objective of the proceeding—reorganization." The Circuit Court of Appeals did not disturb this finding. It merely held that the property of the former company "passed out of the custody of the law and became assets to meet the obligations of the new company, including its obligation to Roberts under the court's order."

Under the Bankruptcy Act the District Court was authorized to make an order reimbursing creditors or stockholders for "proper costs and expenses" incurred by them. If it had appeared that the clients of Roberts had paid him for the professional services rendered them during the proceedings, the order would doubtless have been made to them as reimbursement for such expenses. But here, just as in *Integrity Trust Co. v. Taylor,* 312 Pa. 3, 167 A. 363, the obligation to pay the compensation earned by Roberts was transferred from his original employers to the resulting new corporation. The present garnishee thereby became the employer just as the Supreme Court held, in the case cited, that the Stanley Company became the employer of Taylor, the employee whose wages were there involved.

We are not to be understood as holding that attorneys' fees may never be attached, but a majority of the members of this court are of opinion that, under the facts here present, the attachment was properly dissolved.

Order affirmed.

KELLER, P. J., and KENWORTHEY, J., dissent.