## Eastern Lithographing Corp. *v.* Silk (et al., Appellant).

Argued December 12, 1963. Before RHODES, P. J., WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (ERVIN, J., absent).

*George H. Hafer,* with him *William H. Wood, Sidney Schulman,* and *Hull, Leiby and Metzer,* and *Schulman and Schulman,* for garnishee, appellant.

No argument was made nor brief submitted for plaintiff, appellee.

*Edward L. Silverberg,* for defendant.

OPINION BY WATKINS, J., March 17, 1964:

This is an appeal from the judgment of the Court of Common Pleas No. 4 of Philadelphia County entered against the garnishee appellant, Medical Service Association of Pennsylvania, known as Blue Shield, and in favor of plaintiff-appellee.

On February 26, 1962, a judgment on an agreement dated January 16, 1962 was entered in favor of Eastern Lithographing Corp. and against Daniel Silk, among others, for $21,000. A writ of execution was served on Blue Shield as garnishee.

Blue Shield is a non-profit medical service association authorized to provide medical service to subscribers of low income and their dependents as defined in and pursuant to the provisions of the Act of June 27, 1939, P. L. 1121, 15 PS §2851-219 and is regulated and supervised by the Department of Health and the Insurance Commissioner pursuant to the Act of June 27, 1939, P. L. 1125, 15 PS §2851-1501 et seq. These acts were amended to authorize the furnishing of medical service benefits to over-income subscribers; to include osteopathic services; to include dental services, and to reestablish a method of determining the definition of persons of low income.

In substance, the Blue Shield plan provides that persons of low income or persons of over-income can anticipate payments for medical or surgical services

by becoming Blue Shield subscribers and making pre-payments, periodic or lump sum, to Blue Shield at a monthly, quarterly or annual rate approved by the Insurance Commissioner.

Doctors who become Blue Shield Participating Doctors agree that when a patient is a Blue Shield subscriber and under-income, the doctor will accept in full payment of his services the amount provided in the Blue Shield Fee Schedule or his usual fee, whichever is less, and in the case of the over-income Blue Shield subscriber, the doctor agrees to accept the Blue Shield payment on account and may send a supplemental bill.

Dr. Silk testified that he was an osteopathic physician; that he was a Blue Shield participating doctor; that, as such, he had an agreement to perform medical and surgical services; that he sent to the Blue Shield, on the forms provided, his fees for services according to the Blue Shield schedule; that the said fees for services rendered by him as a Blue Shield participating doctor to Blue Shield subscribing patients amounted to $620.

Eastern Lithographing Corp. attached the fees in the hands of Blue Shield. The garnishee admitted having in its possession $620 of fees due to Dr. Silk but contended in its answer under new matter that all such fees were exempt from attachment by reason of Section 5 of the Act of April 15, 1845, P. L. 459, 42 PS §886, in that the fees were "wages or salary" and in that the fees were "in the hands of the employer". The defendant filed preliminary objections to the writ of attachment and asked that it be dissolved and the garnishee be permitted to pay the funds to Dr. Silk. The preliminary objections raised the identical question raised by new matter in the garnishee's answer, so, by stipulation of counsel, it was agreed that the garnishee be deemed a party to the preliminary objections of Dr. Silk.

The court below dismissed the preliminary objections and entered judgment for the plaintiff against the garnishee. The questions, therefore, to be resolved by this appeal are whether Dr. Silk's fees for professional services under the Blue Shield contract are: "wages or salary" and whether such fees are "in the hands of the employer" as provided in the Act of April 15, 1845, P. L. 459, 42 PS §886, and hence not liable to attachment in the hands of the Blue Shield.

The Pennsylvania rules of civil procedure authorize a garnishee to resist the attachment and assert the defense of immunity of property in its hands from execution, either by preliminary objection or by asserting it as new matter in garnishee's answer to the interrogations. Pa. R. C. P. No. 3141, No. 3142 and No. 3145. Here, the garnishee raised the question in new matter and by preliminary objections and no objection was raised as to procedure.

The act involved provided in pertinent part, ". . . Provided, however, that the wages of any laborers, or the salary of any person in public or private employment, shall not be liable to attachment in the hands of the employer." This Court said in *Bell v. Roberts,* 150 Pa. Superior Ct. 469, 28 A. 2d 715 (1942), at page 471: "Two closely related subsidiary propositions are involved: (1) Whether the money in the hands of the garnishee falls within the legislative designation of monies exempt from attachment; and (2) whether the garnishee may properly be considered the employer of the defendant." We said at page 474:

" 'The obvious purpose of the act is to protect earnings produced by physical or intellectual effort. On first impression the language used, "wages" and "salary", would seem to involve the idea of periodical payments. Wages usually mean daily compensation, salary, payment at longer intervals, monthly or annually, etc. But such a narrow view should yield to the main

purpose of the act, that is to protect compensation for labor. And intellectual labor is quite as worthy of protection as manual labor . . . .

" 'We think the work of the lawyer is within the protection of the statute.

" 'The idea involved in wages and salaries is compensation for personal services as distinguished from profits realized in commercial dealings, or returns from investments or capital or returns from the labor of others.' " And we further said, at page 475 : "Although neither of our appellate courts has, within our knowledge, passed upon the exact question now before us, we agree with the court below . . . that the fund in question was awarded to Roberts in payment for his personal professional labors and is therefore within the exemption of the statute." We are unable to see a distinction between fees due an attorney-at-law from clients and fees due an osteopathic doctor from patients.

The first question to be determined is whether Dr. Silk's fees are wages or salary within the meaning of the Act. The Act has been broadly interpreted and has been held to apply to professional fees due architects, *Union Trust Company v. Altman,* 41 Pa. D. & C. 454 (1941) and due attorney, *Bell v. Roberts,* supra, and in many cases where the money due was for professional service with no element of direct profit from the labor of others.

We have been unable to find any cases where it has been considered as to personal professional services rendered by doctors of medicine, doctors of osteopathy or doctors of dental surgery, but we agree with the appellant that the principles are equally applicable. 7 Standard Pennsylvania Practice, Revised, Sec. 186, page 438, as to the application of the Act, has this to say :

"§186. Specific Application.—The statutory exemption is by its terms applicable whether the com-

pensation is designated wages or salary. It exempts wages agreed to be paid regardless of whether they are measured by time, piece, or other standard, that is, whether they take the form of regular periodical payments or are paid as commissions or as a bonus or in some other manner which makes the time and amount of payment depend upon the extent of the services rendered.

"The exemption extends not only to wages earned by personal manual labor, but also to earnings produced by intellectual effort. The exemption extends, therefore, to the salary of a general manager or superintendent, the compensation of a musician, the wages of a chorister in a church, the compensation of an architect, the fees of a public officer, the fees of a juror, the fee of an attorney, and the commissions of an executor. The exemption of wages prevails even though the superior skill and care of the debtor entitle him to a greater compensation than the ordinary laborer receives; even though the wages were not paid when due, but were allowed to accumulate in the possession of the employer; even though a due bill has been given for the wages; even though the judgment debtor is not performing any work under the contract under which the salary is due, because of the failure of the garnishee to assign any work to him; and even though the claim for wages has been reduced to judgment." See also: Pennsylvania Law Encyclopedia, Vol. 16, pages 243-246, Sec. 7.

The court below found that "as between Dr. Silk and his patients, the sums due to Dr. Silk for professional services could be considered as 'wages or salary' within the meaning of the Act of 1845."

The next question is whether or not the fees due from Blue Shield to a Blue Shield participating doctor of osteopathy for personal professional services already rendered to patients who are Blue Shield subscribers

are fees "in the hands of the employer". "The words 'in the hands of the employer' are placed in the statute solely to limit the exemption to those cases in which the employee has not as yet received his wages, or they have not come under his control." P.L.E. Vol. 16, §7, page 244. And what we said in *Wagner-Taylor Company v. McDowell,* 137 Pa. Superior Ct. 425, 9 A. 2d 144 (1939) : "We believe that the words as set forth in the Act of 1845, 'in the hands of the employer', are placed there solely to limit the exemption to those cases only in which the employe has not as yet received his wages or they have not come under his control. If those words were not in the statute a workman might obtain payment of his wages, deposit the same in his bank account, and contend that the moneys so deposited were exempt from attachment by the creditor by reason of the provisions of the Act of 1845." And what we further said in the *Bell v. Roberts* case, supra, at page 476 :

"On the second branch of this case we are also in accord with the holding of the court below that the effect of the Bankruptcy Act and the order of the District Court thereunder was to make the Philadelphia Transportation Company Roberts' employer within the intendment of our Act of 1845.

"Obviously, the legislative purpose was to exempt compensation for personal services only so long as it had not come into the possession, or under the control of the employee."

We believe the court below was in error in finding that "in the hands of the employer" did not include the fees in the hands of Blue Shield. In the instant case the participating doctor entered into a contract with Blue Shield and his patient who is a Blue Shield subscriber also entered into a contract with Blue Shield. The contract between Dr. Silk and Blue Shield made Dr. Silk an employee of Blue Shield for the purpose

of performing personal professional services. The contract entered into by the subscriber provided that if the subscriber selected Dr. Silk as his physician that the Blue Shield would pay his fee. As a result of these contracts the fees provided in the fee schedule are "in the hands of the employer" as provided in the Act. *Wagner-Taylor Company v. McDowell*, supra; *Bell v. Roberts*, supra; *Integrity Trust Co. v. Taylor*, 312 Pa. 3, 167 A. 363 (1933).

We cannot see how the exemption should be lost because Blue Shield has come into the picture and agreed to pay the fees due a participating doctor for personal professional services for Blue Shield subscribers in accordance with the Blue Shield plan for furnishing medical, osteopathic and certain dental services on a prepayment basis. Both this Court and the Supreme Court have held that wages and salary are exempt in the hands of the employer by novation. *Integrity Trust Co. v. Taylor*, supra; in bankruptcy proceedings and by operation of law, *Bell v. Roberts*, supra; and an implied contract of a stockholder for wages or salary, *Wagner-Taylor Company v. McDowell*, supra. In the *McDowell* case this Court said:

" 'The question therefore raised is whether the amount due an employee for wages by the stockholders of a corporation, as a result of the statutory liability imposed upon such stockholders by the Business Corporation Act of 1933, is exempt from attachment. It is perfectly true that McDowell was the employee of the corporation, but the stockholders constitute the corporation, and since the Act of Assembly has identified the stockholders as the guarantors of wages or compensation due employees, it is difficult for this court to recognize a distinction in the origin of funds coming from the corporation as a legal entity.'

"Appellant relies upon the principle as stated in some of the cases that an exemption must receive a

strict construction, and that the money attached in the instant writ not being 'in the hands of the employer' is subject to attachment. Without questioning this principle, we feel that the Act of Assembly exempting wages from attachment, should not be construed so·as to defeat the manifest intention of the legislature.". And in the *Taylor v. Stanley Company of America,* 305 Pa. 546, 158 A. 157 (1932), at page 551, the Supreme Court said: "This contract took effect by way of novation. All parties concerned agreed to the substitution of a Stanley-Taylor contract for the Zimmerman-Taylor contract, and in that way extinguished the old contract." In the instant case by virtue of the Blue Shield plan the Blue Shield was substituted for the patient as the employer of Dr. Silk with the consent of all parties.

The judgment of the court below is reversed; the preliminary objections are sustained and the writ of attachment dissolved.

MONTGOMERY, J., would affirm on the opinion of Judge CHUDOFF for the Court below.