## Friendly Consumer Discount Co. v. Dillman

*Lloyd B. White, Jr.,* for plaintiffs.

*F. Martin Duus* and *Malcolm B. Petrikin,* for garnishee.

SWENEY, P. J., October 5, 1966. — This matter comes before us as a case stated, wherein a use plaintiff seeks judgment against a garnishee. The case stated reveals that judgment was entered against defendant, Harry A. Dillman, by confession on a warrant contained in a note. A writ of execution directed to the Sheriff of Delaware County was served upon Vertol Division of Boeing as garnishee. Interrogatories subsequently served upon garnishee revealed that defendant was employed by garnishee and had authorized garnishee to deduct $9.50 per week from his pay and to purchase government bonds for defendant's account.

Pursuant to said authorization, garnishee did, subsequent to the attachment execution, withhold money from defendant's pay and purchased bonds with the money withheld. The total sum of money deducted from defendant's pay by garnishee was $171. Garnishee purchased and turned over to defendant four $50 U. S. Savings Bonds at a cost of $37.50 each. Garnishee has remaining in its possession $21 derived from the deducted monies.

The fundamental question of law raised by the case stated is whether certain monies in the hands of garnishee, subsequent to the attachment execution and due from it to defendant, are exempt from attachment within the intendment of section 5 of the Act of April 15, 1845, P. L. 459, 42 PS §886, which act provides, inter alia: ". . . the wages of any laborers, or the

salary of any person in public or private employment, shall not be liable to attachment in the hands of the employer".

The obvious intendment of this act is to protect and prevent attachment of wages: Bell v. Roberts, 150 Pa. Superior Ct. 469, 474.

Since compensation for labor or services remaining in the hands of the employer is, by the Act of 1845, exempt from attachment, use plaintiff can have a judgment against garnishee in the case at bar only if we conclude that something has occurred to take the subject funds from under the protective wing of the Act of 1845. The fund had not left the employer's hands at the time of execution. What, then, was the effect of the authorization to deduct $9.50 from defendant's wages and to purchase bonds with it? Did that constructively remove the wages from the hands of the employer? We think not.

Use plaintiff cites the cases of Bell v. Roberts, supra, and Wartella v. Osick, 108 Pa. Superior Ct. 589, and suggests that, under the authority of these cases, that portion of defendant's wages came under his control which was subject to the deduction for U. S. Savings Bonds, when the same was so deducted and, at that point, ceased to be under the protective mantle of the Act of 1845.

The facts of the Bell v. Roberts case do not deal with the meaning of "wages under the control of the employer" or in any way raise that issue for decision. Rather, the case is concerned with whether certain fees due an attorney constitute wages or salary within the meaning of the Act of 1845 and whether a succeeding or reorganized corporation became the employer of employes originally hired by the bankrupt corporation.

The case of Wartella v. Osick, supra, is cited as authority in the Bell v. Roberts decision for the proposition that the legislature intended to exempt compen-

sation for personal services only so long as the wages had not come into the possession, or under the control, of the employe. A reading of the Wartella case discloses the issue to be whether compensation paid to an employe under The Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended, and deposited in a bank, was exempt from attachment by a creditor. While the resolution of this issue involved The Workmen's Compensation Act and not the Act of 1845, the language providing for exemption from attachment execution appears in both acts. Nevertheless, the Wartella case did not involve the issue of "control". In the Wartella case, the money had been paid to the employe and was deposited in his bank and was no longer exempt from attachment execution.

While we believe that the concept of control, as related to this problem, is a legitimate one, we do not think that the facts presented in the case stated allow the conclusion that the subject funds were under the control of defendant employe while still in the hands of the employer, garnishee. The employe possessed no greater right, power or incidence of ownership after the funds were deducted from his wages than before. In both instances, at best, he had a cause of action against his employer for wages due and not paid. This concept is supported by the decision in Danziger v. Ferber, 272 Pa. 193, wherein the Supreme Court held that all sums due for personal services, whether in the form of regular payments or in some other manner, are exempt from attachment, and this is so even though the same are not paid when earned or due, but are permitted to accumulate in the hands of the employer.

DECREE

And now, October 5, 1966, it is ordered and decreed that the attachment execution herein issued is dissolved. An exception is noted for use plaintiffs.