## Continental Bank v. Abrams

*T. J. Scully,* for plaintiff.
*John Wendell Beavers,* for defendant Leonard S. Abrams.

BAYLEY, *J.*, July 20, 1987—On December 12, 1986, plaintiff, Continental Bank, filed a writ of execution against defendant, Leonard S. Abrams, seeking to enforce a money judgment ($84,389.92) pursuant to Pa.R.C.P. 3101, et seq. The writ was served against the Medical Service Association of Pennsylvania, t/a/d/b/a Pennsylvania Blue Shield, as garnishee. Blue Shield filed an answer to plaintiff's interrogatories with new matter. It avers that at all relevant times defendant was a participating doctor in its system of health care reimbursement. As of May 29, 1987, it had withheld $8,207.62 in payments due defendant under his participating doctor's agreement.

Defendant, Leonard S. Abrams, a podiatrist, has filed a claim for exemption from the garnishment of the funds held by Blue Shield. He alleges that those funds constitute exempt wages pursuant to the Judicial Code at 42 Pa. C.S. §8127, which provides:

"Personal earnings exempt from process the wages, salaries and commissions of individuals shall while in the hands of the employer be exempt from any attachment, execution or other process except upon an action or proceeding:

"(1) For support.

"(2) For board for four weeks or less.

"(3) Under the act of August 7, 1963 (P.L. 549, No. 290), referred to as the Pennsylvania Higher Education Assistance Agency Act."

Plaintiff has replied by alleging that the garnished funds do not represent exempt wages because the relationship between Blue Shield and defendant is that of an independent contractor and the funds were generated by another doctor in defendant's office. Pursuant to Pa.R.C.P. 3132.1(b), we took testimony at a hearing on June 29, 1987, upon which we make the following findings of fact.

(1) Defendant, Leonard S. Abrams, a podiatrist, entered into a written participating doctor's agreement with the garnishee, Pennsylvania Blue Shield, on June 1, 1970. He was assigned an office account number by Blue Shield. Pursuant to the regulations of Blue Shield, all claims for services performed by any member of defendant's office must be submitted on that claim number.

(2) Defendant became ill approximately two and one-half years ago and is now only able to devote approximately two mornings a week to his practice of podiatry.

(3) Approximately one and one-half years ago defendant entered into an arrangment with another podiatrist, Jeffrey Sandler. Although Dr. Sandler has his own office where he treats his own patients, he assists defendant in defendant's office in seeing defendant's patients. This arrangement was entered into to hold defendant's practice together until defendant can return to work fulltime.

(4) When Dr. Sandler sees patients for defendant he personally signs a Blue Shield reimbursement form and sends the claim to Blue Shield on defendant's account as required by Blue Shield's regulations.

(5) Defendant employs a bookkeeper and two office assistants and pays them wages. When Blue Shield sends reimbursement checks to defendant for services performed by Dr. Sandler in defendant's office, defendant cashes them.

(6) Pursuant to the arrangement between Dr. Sandler and defendant, Dr. Sandler receives regular draws against his fees for services. Dr. Sandler pays defendant overhead for such items as rent, salaries of employees, etc.[1] An annual adjustment is made

---

1. The building in which defendant's office is located is owned by defendant's wife.

with respect to the income from patient fees as reduced by the draw against overhead. Other than overhead, defendant receives no portion of the fees charged by Dr. Sandler to defendant's Blue Shield account number.

## DISCUSSION

Citing *Houston-Starr Co. v. Davenport,* 227 Pa. Super. 186, 324 A.2d 495 (1974), plaintiff maintains that Dr. Abrams' relationship with the garnishee, Blue Shield, is as an independent contractor and not as employer-employee. *Houston-Starr* holds that funds held by a garnishee for an independent contractor do not fall within the wage exemption from garnishment.[2]

Defendant maintains that we are bound by the precedent of *Eastern Litho. Corp. v. Silk,* 203 Pa. Super. 21, 191 A.2d 391 (1964). Like *Houston-Starr Co.,* this case was decided under the Act of 1845. In *Eastern Litho Corp.,* a physician claimed an exemption for funds garnished in the control of Blue Shield pursuant to his participating doctor's agreement. The Superior Court noted that the purpose of the law allowing for an exemption of wages from garnishment was to protect earnings produced by physical and intellectual effort. It stated that the idea involved in wages and salaries is compensation for personal services as distinguished from profits realized in commercial dealings, or returns from investments, or capital, etc. The court concluded that the funds held by Blue Shield resulted from the claimant-physician's personal labors and therefore

2. *Houston-Starr* was decided under the wage exemption statute in the Act of April 15, 1845, P.L. 459, §5, 42 P.S. §886, now repealed. For the purposes of this case the wage exemption in the prior statute was similar to the current provision in the Judicial Code.

constituted wages which were exempt from garnishment under the statute. The court held that the fees due the participating physician from Blue Shield for personal services already rendered to patients who are Blue Shield subscribers are fees in the hands of an employer and therefore are exempt under the law. Such fees are exempt from attachment so long as the compensation has not come into possession or under the control of the physician.

We are bound by the holding in *Eastern-Litho Corp.,* that fees held by Blue Shield for participating physicians for services already rendered to patients constitute exempt wages in the hands of an employer. We conclude that the fees payable by Blue Shield for services performed by Dr. Sandler in Dr. Abrams' office are the wages of Dr. Abrams under the facts of this case.[3] All such fees earned by Dr. Abrams have resulted from the personal services of persons working in his office and are exempt from attachment while under the control of Blue Shield. See *Danziger v. Ferber,* 272 Pa. 193, 116 Atl. 516 (1922); *Kolber v. The Cyrkle,* 433 Pa. 247, 249 A.2d 555 (1969). Defendant's own arrangments with Dr. Sandler for the ultimate distribution of funds between them does not make those funds now held by Blue Shield subject to attachment.

Accordingly, the following order is entered.

## ORDER OF COURT

And now, this July 20, 1987, the writ served against Medical Service Association of Pennsylva-

---

3. If the funds held by Blue Shield are considered the wages of Dr. Sandler, then of course there is no legal basis for an attachment by plaintiff whose judgment is against Dr. Abrams.

nia, t/a/d/b/a Pennsylvania Blue Shield, as garnishee, is dissolved. Costs to be divided equally between plaintiff and defendant.