**Andrew S. MICKLER, Appellant**

v.

**Terry J. MICKLER, Appellee.**

No. 2006–CA–001313–MR.

Court of Appeals of Kentucky.

Jan. 25, 2008.

David M. Cantor, Paul J. Hershberg, Louisville, KY, for appellant.

Anthony G. Raluy, Terry W. Holloway, Louisville, KY, for appellee.

Before ACREE, CLAYTON and WINE, Judges.

## OPINION

ACREE, Judge.

Andrew Mickler appeals from an order of the Jefferson Family Court denying his challenge to execution which he filed to prevent his former spouse, Terry, from garnishing monies owed to his medical practice by medical insurance providers. He argues these funds constitute wages and, as such, he is entitled to a seventy-five percent exemption from garnishment. We disagree and affirm the trial court.

After twenty-two years of marriage, Terry filed for divorce from Andrew. By then the two children born of the marriage were no longer minors. Andrew, an otolaryngologist, had maintained his own medical practice since 1984. Between 1994 and 2000, he had annual income in excess of $200,000.00. Terry, who was fifty-three years old at the time of the divorce, had not worked outside the home during the marriage, with the exception of helping out at Andrew's office on occasion.

The family court issued its divorce decree in January 2003, restoring the parties' nonmarital property and dividing marital property. Terry's portion of the marital property was to include $111,809.03 for her share in Andrew's medical practice, half the proceeds from the sale of the marital residence and another piece of property, her car, and over $400,000.00 in retirement funds. Nevertheless, the trial court concluded that the parties enjoyed a lavish standard of living and that Terry's age and lack of employment history left her unable to meet her reasonable needs through appropriate employment. Thus, Andrew was ordered to pay $7,000.00 per month in maintenance for a period of twelve years. He was also ordered to pay one-half of Terry's reasonable attorney's fees. Andrew appealed from this order, but failed to file a supersedeas bond to stay execution.

When Andrew failed to satisfy his court-ordered obligations, Terry filed a motion in family court to have Andrew held in contempt. Two days before the hearing on the contempt motion, Andrew filed for bankruptcy. He eventually agreed to dismiss his bankruptcy petition after signing an agreement with Terry to pay a reduced amount of maintenance while the appeal from the divorce decree was pending. However, he failed to disclose that he had just emptied his checking account, removing $64,000.00. After this court affirmed the divorce decree, Terry filed a second contempt motion. Andrew responded by filing a second bankruptcy petition, seeking to discharge only those debts which arose out of the divorce decree. After a two-day hearing, the bankruptcy court dismissed his petition with prejudice, noting that Andrew had filed it for the purpose of attempting to avoid compliance with orders from the family court. The Kentucky Supreme Court then denied Andrew's motion for discretionary review of the divorce decree.

With the divorce decree final, Terry served a number of garnishments on various insurance carriers thought to owe funds to Andrew's medical practice. Andrew filed a motion challenging execution, arguing that these funds were earnings and, as such, seventy-five percent of those earnings were exempted from execution by Kentucky Revised Statute (KRS) 427.010(2)(a). The trial court conducted a hearing on the issue after which it denied Andrew's motion. This appeal followed.

Andrew repeats to this Court the argument he made below. He asserts that his accounts receivable arose solely from professional services performed by him and, therefore, qualify as earnings of which only twenty-five percent is subject to garnishment under KRS 427.010(2)(a). His argument is more precisely governed by KRS 427.005, wherein the term "earnings" is defined as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise...." KRS 427.005(1). He believes all of his accounts receivable fall under this definition.

Andrew notes the lack of Kentucky case law directly on point. However, he cites Pennsylvania cases which he contends support his argument. *Continental Bank v. Abrams*, 47 Pa. D. & C.3d 582, 1987 WL 54432 (Pa.Com.Pl.1987); *Eastern Litho. Corp. v. Neville*, 203 Pa.Super. 21, 198 A.2d 391 (1964). The trial court considered these cases as well as *Bell v. Roberts*, 150 Pa.Super. 469, 28 A.2d 715 (1942), the case relied upon by both of the more recent Pennsylvania cases. The *Bell* court quoted, with approval, the following language from the order being appealed:

> The obvious purpose of the [relevant Pennsylvania statute] is to protect earnings produced by physical or intellectual effort.... The idea involved in wages and salaries [i.e., earnings] is compensation for personal services **as distinguished from profits realized in commercial dealings, ... or returns from the labor of others.**

*Bell*, 28 A.2d at 717 (emphasis added). We note, as the trial court implied, that the Pennsylvania and Kentucky statutes are dissimilar. For that reason, the trial court, and now this Court, view the Pennsylvania cases as informational, but not truly instructive.

■ On the other hand, the very same definition for "earnings" adopted by the Kentucky legislature was also adopted by the Idaho legislature. Idaho Code (I.C.) § 11–206, subsection 1. (" 'Earnings' means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program."). That Idaho definition has been interpreted under the Bankruptcy Code, 11 United States Code (USC) § 541, as including "accounts receivable" under proper circumstances.

> Although "accounts receivable" is not expressly included in the definition of "earnings" under § 11–206(1), this Court has held that:
> [S]o long as the subject "receivable" was actually derived from the personal services of the debtor, it is exempt to the degree provided in the statute. **The matter is, in the final analysis, one of proof of the facts surrounding the creation of the account receivable and to what extent the account receivable does or does not reflect compensation for personal services.**
>
> . . . .
>
> If the obligation is for the personal services and labor of the debtor, the Idaho legislature has provided for an exemption of 75% of that amount. It does not matter whether it is called compensation, salary, bonus, wage, commission, or "account receivable" **so long as the factual predicate is established as a matter of record.**

*In re Atkinson*, 258 B.R. 769, 773 (Bkrtcy.D.Idaho 2001)(emphasis added; quotation marks and citations omitted). We believe this is an accurate interpretation of our own statute, KRS 427.005(1).

■ Further, we believe the family court properly applied our statute when it

held "that these funds are due to Dr. Mickler's medical practice and contain not only fees for the professional service delivered by Dr. Mickler but also fees for other services delivered by the staff and employees in Dr. Mickler's medical practice." Andrew's error was to presume, as he indicated in his brief, that it is the family court's function "to determine a formula by which to segregate the funds attributable to Dr. Mickler's work from those earned by others[.]" It is not.

As is clear in *Atkinson, supra,* "[t]he matter is, in the final analysis, one of proof of the facts surrounding the creation of the account receivable and to what extent the account receivable does or does not reflect compensation for [Dr. Mickler's] personal services." Dr. Mickler—that is, Andrew— failed to put forth any proof to identify for the family court that portion of the total receivables specifically attributable to his personal efforts. Because Andrew failed to satisfy that burden of proof, the family court was correct in denying his motion.

The order of the Jefferson Family Court is affirmed.

ALL CONCUR.