## Rosenberg, Appellant, *v.* Silver.

Argued April 20, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

Appeal, No. 148, 

*Mitchell W. Miller,* with him *Levi, Mandel & Miller,* for appellants.

*Horace A. Stern,* with him *Wexler, Mulder & Weisman,* and *John E. Mulder,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, May 27, 1953:

On February 25, 1947, a summons in assumpsit issued in this case from the Court of Common Pleas No. 6, Philadelphia County, and 2 days later it was in the hands of the defendant Charles Silver. No Complaint

having been served, the defendant on March 11, 1947, ruled the plaintiffs, Harry Z. Rosenberg and Anna F. Rosenberg, trading as H. Z. Rosenberg & Co., for a Complaint or suffer judgment of non pros. On September 29, 1951, four years and nine months after the plaintiffs initiated their action, the defendant died; and the case against him had still not proceeded beyond the summons stage. Finally on April 18, 1952, the Complaint in Assumpsit was filed with the Prothonotary and then on September 22, 1952, a Suggestion of Death was entered, together with a rule on the executrix, Etta Silver, to show cause why as personal representative of the deceased, she should not be substituted as a party defendant. The executrix answered adversely on October 10, 1952. The court below discharged the rule and this appeal followed.

The plaintiffs contend that the substitution of a personal representative is but routine procedure and no discretionary intervention by the Court was required. Section 602 (b) of Article VI of the Fiduciaries Act of 1949, April 18, P. L. 512 (20 P.S. 320.602) reads: "(b) Compulsory substitution. If the personal representative does not voluntarily become a party, the prothonotary or clerk of the court, as the case may be, upon the praecipe of an adverse party setting forth the material facts, shall enter a rule upon the personal representative to show cause why he should not be substituted as a party."

Since the personal representative has the right to show cause why he should not be substituted, court machinery must be provided for determining the ensuing contest. The very right to issue a rule to show cause legally presupposes a judicial discretionary authority. Thus, it cannot be questioned that the Court of Common Pleas was empowered to refuse the permission sought for in the substitution of parties, and our inquiry is

therefore limited to determining whether the Court abused that discretion.[1]

To support a finding of abuse of discretion the record must show that the law has been overridden or misapplied, or that the judgment exercised by the Court was manifestly unreasonable or motivated by partiality, prejudice, bias or ill-will: *Mielcuszny v. Rosol,* 317 Pa. 91; *Garrett's Estate,* 335 Pa. 287.

It is argued by the plaintiffs that the "effect of the court's holding is to state that a cause of action against an individual is extinguished by his death." It was not the defendant's death which extinguished the plaintiffs' inchoate action but their own inexcusable delay. The plaintiffs were not satisfied with mere inaction; they elaborated on the process of delay. When, 5 years and 2 months subsequent to launching their lawsuit, they finally decided to file a Complaint in Assumpsit, they brought the action against a dead man. Then they waited another 5 months to file a Suggestion of Death and to seek a substitution of parties. There is no explanation in the record for this slothful inattention to court business. While statutes provide that death shall not cancel out obligations—contractual or otherwise—law and justice require where possible, the adjudication of a man's pending lawsuits while he is still alive to give the adjudicating tribunal the benefit of his particular knowledge on the subject in controversy. The Complaint here shows that the plaintiffs had direct negotiations with the defendant and the defendant's agent Feinberg. It would appear that the deceased defendant

---

[1] The court's action was similar to the entry of judgment of non pros for laches or want of prosecution, which we have repeatedly held was discretionary with the court: *Margolis v. Blecher,* 364 Pa. 234; *Waring v. Pa. R. R. Co.,* 176 Pa. 172; *Potter T. & T. Co. v. Frank,* 298 Pa. 137; *Ulakovic v. Metropolitan Life Ins. Co.,* 339 Pa. 571.

took a direct and active part in his business, that he telephoned the plaintiffs, corresponded with them, sent them samples and new goods to replace rejected goods and in other ways he dealt directly and personally with his now posthumous litigating antagonists. There is no allegation in the Complaint that the agent Feinberg is in possession of all the facts upon which the litigation is based. It could be, as the lower court properly said: "For all we know, there are a dozen defences which the dead defendant could make: denial of Feinberg's authority, denial of the contract, denial of payments, breach by the plaintiffs, among others."

But these defences are now entombed with the defendant.

While it is true the statute of limitations in assumpsit actions is 6 years, the defendant was available for 4 years and 7 months to reply to whatever deficiencies and indebtedness the plaintiffs intended to charge him with.

In *Kinter v. Commonwealth Trust Co.*, 274 Pa. 436, this court in discussing the issue of laches, as affected by the death of a principal, said: "In the instant case, for nearly six years after plaintiff gave the option and five years after he transferred the stock he remained silent and inert. Meantime the situation of the parties had entirely changed by the death of Hildrup, who transacted the business with plaintiff and was conversant with all the facts. As to this, the trial court pertinently says: 'The death of Hildrup materially changed the conditions so far as Tracy and Starkey are concerned. The dealings between the plaintiff and the defendants were all through Hildrup. He would necessarily be a most important witness. His mouth is sealed by death. He is not here either to defend himself, or the others, against the charges of fraud. His evidence is denied to the defendants because of the delay of the

plaintiff in bringing his bill. The condition of the defendants has become so changed that it cannot be restored and it is extremely doubtful whether they could produce evidence necessary to a fair presentation of the case on their part.' "

Even though the *Kinter* case was an equity action, determinative of the question as to whether the plaintiff was guilty of laches in instituting suit, the reasoning there applies with equal cogency to the facts in the case at bar.

Nor does the action of the lower court reduce the period prescribed in the statute of limitations, as argued by the plaintiffs on this appeal. The decision of the lower court only holds that once a plaintiff begins a law suit, he notifies the world he intends to proceed with seriousness and diligence in following up the legal process he has instituted. And if he does not measure up to this responsibility which he has voluntarily assumed and then the person against whom he has brought suit dies, and the dead man's estate is prejudiced because of the fact, the plaintiff becomes guilty of a delay which will estop him from proceeding further. That is the extent of the lower court's decision and this Court, in affirming that decision, does not propose to extend the periphery of the doctrine of laches nor shorten the legitimate radius of any statute of limitations. The law will aid the aggrieved citizen who trips on his way to the courthouse, but it will rigorously scrutinize the dilatory demands of the litigant who enters Court to file a single paper only to weave around it the cobwebs of neglect and purposeless (or worse, purposeful) delay.

In *Potter T. & T. Co., Admr. v. Frank,* 298 Pa. 137, we said : " 'There is no fixed rule as to the length of delay that will prevent plaintiffs proceeding. It is a question of discretion controlled by the facts of the particular case, and the decision of the court below will not be reversed unless there is a manifest abuse of discretion.' "

In *Riley v. Boynton Coal Co.*, 305 Pa. 364, this Court set forth the purpose of the statute of limitations and the doctrine of laches in the following language: "Those who have interests which they wish to have judicially characterized as legal rights should take prompt measures to bring such interests before the proper tribunals. Persons against whom actions may be threatened have claims to judicial consideration as well as those who threaten such actions; both are equally entitled to have the controversy between them promptly adjudicated while witnesses are still available and memories are undimmed by long intervening years."

It is contended, in addition, by the plaintiffs that the defendant himself was at fault for not having demanded judgment of non pros prior to his death. But there was no obligation on his part to spur the plaintiffs on to further action against him. When he filed his rule on the plaintiffs to file their Complaint he served notice that he stood ready to respond to their averments and it is assumed that he held himself in readiness for the following four years and nine months to make answer. Neither the law nor prudence dictated that he importunately insist the plaintiffs drag him into the arena of forensic combat.

In *Waring Bros. & Co., v. Pa. R.R. Co.*, 176 Pa. 172, we said: "It is no reply to say that the defendant may compel the plaintiff to declare his cause of action. It is not his duty to do so, but it is the plaintiff's duty to proceed with his cause within a reasonable time. He is the actor and must act, or fail of his action."

This principle was re-asserted in *Potter T. & T. Co.*, supra, (p. 140, 141): "True, the defendants could have forced the issue, but were not bound to do so. Why should they voluntarily incur the trouble and risk of expensive litigation? . . . Plaintiff is the actor and it is his duty to bring on the trial. . . As a matter of common fairness, he who brings another into court should prose-

cute the claim against him with reasonable diligence. . . There is no greater reflection upon the administration of justice than the permission of endless litigation."

Order affirmed. Appellants to pay costs.