**Goldstein v. Goldstein**

*Donald S. Mazzotta,* for plaintiff.
*Robert A. Lebovitz,* for defendant.

BROSKY, *J.*, May 27, 1976 — Whether an attorney can properly seek to exact payment for his own counsel fees under an Assignment and Release wherein the client acknowledges an indebtedness by pursuing an action designed to have the court recognize a charging lien against a court account into which support arrearages are to be paid?

## PROCEDURAL HISTORY

On or about June 16, 1975, Racelle A. Goldstein, engaged Robert A. Lebovitz, Esq., to handle legal problems relating to the above captioned case and related matters involving divorce, property settlement, tax advice, and a review of certain trusts. As a result of Attorney Lebovitz's ensuing efforts on behalf of his client, an order was entered by this court against Morton L. Goldstein for support arrearages of $9,000. Thereafter, another hearing was conducted before this Court and an additional $2,781 was awarded.

For the legal services received, Racelle A. Goldstein paid a portion of counsel's fee by check. The remainder was the subject of an assignment and release which specifically mentioned that the final portion of the legal fee was to be provided by the support arrearages fund which resulted from counsel's efforts on her behalf. Said arrangement was designed to alleviate her need to tap her savings accounts and trust funds to provide the payment for counsel fees.

Racelle A. Goldstein subsequently notified the court to disregard the assignment and pay the funds directly to her.

On May 7, 1976, Robert A. Lebovitz, Esq., then counsel for Racelle A. Goldstein, obtained a rule to show cause why the funds due her from Morton L.

Goldstein should not be paid to the prothonotary and frozen until subsequent order of court.

On May 25, 1976, counsel for Morton L Goldstein and newly engaged counsel for Racelle A. Goldstein filed a motion to dismiss the petition, vacate the order, and discharge the rule.

## FINDINGS OF FACT

The relevant facts which bear upon the legal issues raised via the motion to dismiss have been recited in the procedural history portion of this opinion.

## DISCUSSION

The moving party in this instance has raised several objections which will be addressed seriatim.

Initially, the proceedings have been challenged as defective on the ground that the constitutional rights of the above named plaintiff and defendant are being denied in that alleged property rights are being affected without due process, namely, an opportunity to be heard. This contention cannot survive, however, in face of the scheduled hearing on June 1, 1976 whereat the parties will be provided an opportunity to show cause why the support arrearage funds in the prothonotary's office should not be frozen and/or allocated for satisfaction of the alleged attorney's charging lien.

Secondly, it is contended that the fund in question was not created by Robert A. Lebovitz, Esq., and, therefore, there can be no common law charging lien against said fund. Alternatively, it has also been contended that said equitable charging liens extend only to services rendered in a proceeding

creating the fund and does not extend to services rendered in other cases. These contentions, however, arise from a basic factual dispute regarding the related transactions and are such that they properly will be issues to be resolved through the upcoming hearing.

Thirdly, there has been a contention that a support arrearage fund is not a proper subject of any attorney's charging lien. Since such a contention is unique in the law of Pennsylvania, it properly needs to be addressed at this juncture of the proceedings.

Pennsylvania's appellate courts have firmly established that an attorney who renders professional services to his/her client has a charging lien entitling him to priority of payment for his costs and services out of a fund discovered or created through his own efforts: Turtle Creek Bank & Trust Company v. Murdock, 150 Pa. Superior Ct. 277, 28 A.2d 320 (1942); also Appeal of Atkinson, 8 Sadler 292, 11 Atl. 239 (1887). Some of the funds which have been subjected to such a charging lien include the proceeds of a condemnation proceeding: Harris's Appeal, 323 Pa. 124, 186 Atl. 92 (1936); the proceeds of a Sheriff's Sale: Turtle Creek Bank & Trust Company v. Murdock, supra; a fund created in a trespass action: Jones et al. v. Pittsburgh, 157 Pa. Superior Ct. 528, 43 A.2d 554 (1945); and a trust fund: Silverstein v. Hornick, 376 Pa. 536, 103 A.2d 734 (1954).

However, no cases have come to this court's attention which have involved an attempt to apply a charging lien to a support arrearage fund. Thus, an analysis of the nature of such a fund is required in order to resolve the appropriateness of such an endeavor.

In this regard, it is helpful to examine Pennsylvania's general posture on support payments. In this realm, Pennsylvania law reflects a fundamental policy that the fruits of an individual's mental and/or manual labor should be preserved for the employe and/or his/her family. To assure that the earnings should go to supply the fundamental and essential daily needs without hinderance from creditors, the legislature has provided that an individual's wages or salaries, while in the hands of the employer, shall not be liable to attachment or execution by a creditor: Act of April 15, 1845, P.L. 459, sec. 5, 42 P.S. §886.

This policy has been further supported by court decisions which have uniformly protected and assisted the wage earner in obtaining the fruits of his/her labor without interference from creditors by holding that the wage exemption could not be waived: Wagner-Taylor Co. v. McDowell, 137 Pa. Superior Ct. 425, 9 A.2d 144 (1939); Bell v. Roberts, 150 Pa. Superior Ct. 469, 28 A.2d 715 (1942).

To further this objective of assuring that an individual's wages and/or salaries should benefit those who are dependent upon him/her, The Pennsylvania Civil Procedural Support Law carved out a significant exception relative to this policy against wage attachments; yet, the exception is one which reinforces the concept that wages should go for the immediate support needs of the family. Thus, the statute currently provides that:

"The wages, salary or commissions of any person *owing a duty of support* may be attached . . . ." (emphasis added). Act of July 13, 1953, P.L. 431, sec. 9, as amended, 62 P.S. §2043.39.

From the foregoing, it can be seen that an indi-

vidual's earnings are protected from general creditors so that they may be readily available to meet the current maintenance of the employe and/or his family. This applies whether the family members continue to reside together as a unit or whether they live apart.

Throughout the foregoing discussion, there is evident the concept that Pennsylvania places foremost priority on having an individual's earnings used for the family's basic, currently required necessities. In this regard, there is an inherent corresponding duty incumbent upon a spouse who is charged with the beneficiary child's custody to take all reasonable action to insure that proper payments under a support order are satisfactorily made. As a potential plaintiff in an appropriate action, the custodian ex-spouse should prosecute the claim with reasonable diligence: Rosenberg v. Silver, 374 Pa. 74, 97 A.2d 92 (1953).

In instances where the custodian spouse elects to individually provide for the dependent child and underwrite same with independent funds without enforcing the support order in timely fashion, such an election constitutes a deliberate course of conduct which runs contra to the preferred procedures which have been designed by our legislature and approved by our courts. Any such course of action which delays enforcement of a support order until arrearages are substantial must be construed as a calculated maneuver which converts the support payments which are owing into a debt. Such delayed court proceedings which are initiated after the support arrearages are massive are in reality attempts to collect upon a debt which runs exclusively to the plaintiff-parent's benefit. At that point, the arrearages lose their character of being

for the immediate support of daily necessities and a judgment thereon is in all respects the same as any other judgment. Therefore, a support arrearage judgment which has no unique characteristics to set it apart from other types of judgments can subject the resulting fund to an attorney's charging lien.

In light of the preceding, the motion to dismiss must be denied.

## ORDER

And now, May 27, 1976, after conference with all the attorneys and due consideration of their respective briefs, it is hereby ordered and decreed that the instant motion to dismiss the petition, vacate order and discharge the rule is denied and the matter shall proceed to hearing as previously scheduled.