**Commonwealth of Pennsylvania by Attorney General LeRoy S. ZIMMERMAN**

v.

**AUTO MART, INC., a Pennsylvania Corporation, and Leo Parks, individually and as owner of Auto Mart, Inc.**

**Appeal of: Leo Parks.**

Commonwealth Court of Pennsylvania.

Argued Oct. 17, 2006.

Decided Nov. 15, 2006.

---

**10.** *See* 1 Pa.C.S. § 1921(c) (considerations for ascertaining legislative intent when statutory language not explicit).

Louis P. Vitti, Pittsburgh, for appellant.

Kemal Alexander Mericli, Sr. Deputy Attorney General, Pittsburgh, for appellee.

BEFORE: COLINS, President Judge, SMITH–RIBNER, Judge, COHN JUBELIRER, Judge.

OPINION BY Judge COHN JUBELIRER.

In this appeal, Leo Parks challenges the order of the Court of Common Pleas of Allegheny County (trial court) discharging a previously entered Rule to Show Cause. The parties present two issues for our review: (1) whether the trial court's order discharging Parks's Rule to Show Cause is final and appealable to this Court;[1] and (2) whether a rule to show cause is the appropriate procedural vehicle to seek modification of an assurance of voluntary compliance (AVC) under the Unfair Trade Practices and Consumer Protection Law (Act).[2]

As a result of a criminal investigation regarding inaccurate odometer readings and the sale of defective motor vehicles, the Commonwealth, acting through the Attorney General (AG), entered into an AVC with Parks in November, 1987. Under the AVC, Parks agreed to: (1) pay civil penalties; (2) "forfeit the right to do business in any capacity in the automotive industry" in this Commonwealth (AVC at 5); (3) recognize the trial court's jurisdiction over the AVC and its parties under Section 8 of the Act, 73 P.S. § 201–8;[3] and (4) comply with prevailing relevant statutes. (AVC at 3–5.)

 In November, 2001, Parks applied for a license as a motor vehicle salesperson with the Department of State. After Parks submitted his criminal history[4]

---

1. In March, 2006, this Court held a telephone hearing regarding whether the trial court order is final and appealable. Subsequently, we issued an order directing the parties to brief and argue this issue along with the merits.

2. Additionally, Parks raises the following five issues in his brief: (1) whether the prohibitions under an AVC must be reasonable; (2) whether an AVC must be uniformly applied and enforced; (3) whether an AVC may be judicially modified; (4) whether the AG may permissibly include in an AVC prohibitions against performing otherwise legal actions as part of an occupation; and (5) whether the failure of the Act to clearly specify the AG's enforcement powers renders the statute and its sanctions unconstitutional. In discharging the rule, the trial court did not address any of these issues.

3. Act of Dec. 17, 1968, P.L. 1224, as amended. Section 8 of the Act, 73 P.S. § 201–8(a), reads in pertinent part:

For the purposes of this section [regarding civil penalties upon violating an AVC] the court ... in which an assurance of voluntary compliance is filed shall retain jurisdiction, and the cause shall be continued; and, in such cases, the Attorney General, or the appropriate District Attorney, acting in the name of the Commonwealth of Pennsylvania, may petition for recovery of civil penalties and any other equitable relief deemed needed or proper.

4. After entering into the AVC, Parks spent some time incarcerated. While the details remain unclear, Parks's brief and his deposition suggest that Parks was sentenced to 11½ to 23 months in a work-release program at the Allegheny County Jail between October, 1997 and February, 1999, stemming from various motor vehicle charges. (Parks's Br. at 6; Parks Dep. at 21–22, R. at 9; Parks's Pet. for Rule to Show Cause at 1, R. at 2.) Sentenced to probation, Parks later violated his probation, somehow relating to the selling of outdoor

to the Clerk of Courts in Allegheny County, the Department of State granted Parks a license in December, 2001. In October, 2004, the AG became aware that Parks had obtained a license. One month later, the AG sent a letter to Parks's counsel requesting that Parks surrender his license in lieu of the AG filing a petition to impose sanctions for his violation of the AVC. In December, 2004, Parks filed a Petition for Rule to Show Cause in the trial court, seeking to modify the AVC to permit Parks to maintain his license. The trial court issued the rule, and the AG responded by arguing that Section 5 of the Act, 73 P.S. § 201–5,[5] allows only the AG to reopen an AVC once it has been closed. By way of a counterclaim, the AG requested the court to order Parks to forfeit his license and impose a civil penalty. In September, 2005, Judge Farino dissolved the previous rule to show cause without prejudice, holding that "an [AVC] is not

advertising, and spent three years in state prison. (Parks Dep. at 22, R. at 9.) He was released on parole in December, 2001. (Pet. for Rule to Show Case at 1, R. at 2.)

**5.** Section 5 reads:

In the administration of this act, the Attorney General may accept an assurance of voluntary compliance with respect to any method, act or practice deemed to be violative of the act from any person who has engaged or was about to engage in such method, act or practice. Such assurance may include a stipulation for voluntary payment by the alleged violator providing for the restitution by the alleged violator to consumers, of money, property or other things received from them in connection with a violation of this act. Any such assurance shall be in writing and be filed with the court. Such assurance of voluntary compliance shall not be considered an admission of violation for any purpose. Matters thus closed *may at any time be reopened by the Attorney General* for further proceedings in the public interest, pursuant to section 4.

73 P.S. § 201–5 (emphasis added).

amenable to modification by rule...." (Trial Ct. Order at 2.) This appeal followed.[6]

■ As an initial matter, Parks argues that the trial court's discharge of a rule to show cause is final and appealable. Because the discharge carries the effect of "putting the losing party out of court," Parks claims the order below is analogous to a final, appealable order. (Parks's Br. at 7.) The AG agrees with Parks that the trial court's order discharging the Rule constitutes a final and appealable order.

To determine whether an order from the trial court is appealable, we begin with Rule 341(b) of the Rules of Appellate Procedure which defines a final order as, among other things, one that "disposes of all claims and of all parties."[7] The Superior Court, in *O'Neill v. Gioffre*, 384 Pa.Super. 579, 559 A.2d 588, 589 n. 3 (1989), encountered an appeal stemming from a

**6.** The appealability of a trial court order presents a question of law which this Court reviews de novo. *Hospital & Healthsystem Assoc. of Pa. v. Department of Public Welfare*, 585 Pa. 106, 116 n. 12, 888 A.2d 601, 607 n. 12 (2005). Because the issuance of a rule to show cause is predicated on judicial discretion, this Court reviews a trial court's discharge of the rule for abuse of discretion. *Rosenberg v. Silver*, 374 Pa. 74, 76–77, 97 A.2d 92, 94 (1953). Abuse of discretion occurs when the trial court commits an error of law or renders a "manifestly unreasonable" judgment. *Id.*

**7.** Pa. R.A.P. 341(b) reads in its entirety:

A final order is any order that:
(1) disposes of all claims and of all parties; or
(2) any order that is expressly defined as a final order by statute; or
(3) any order entered as a final order pursuant to subdivision (c) of this rule [regarding certain interlocutory orders certified by the trial court or governmental unit which would expedite the resolution of litigation].

trial court discharging a rule to show cause why a child support judgment should not be reopened. *O'Neill* held that the discharge effectively constituted a final, appealable order because, with the discharge, the trial court made "clear its denial of the appellant's petition" to open the judgment. *Id.*

Here, the trial court's dissolution of Parks's Rule to Show Cause is a final and appealable order. The trial court's decision terminates Parks's action to modify the AVC and forces him to either appeal or file another action and, because a counterclaim is not an appropriate response to a rule to show cause, all parties are out of court.[8] Because the trial court's order disposes of all claims and terminates the litigation for both parties, we will address the substantive issue before us.

■ The AG is charged with enforcing the Act's provisions in order to effectuate its broad objectives.[9] Section 4 generally allows the AG to institute an action against

individuals who are reasonably believed to have violated the prohibitions of the Act. 73 P.S. § 201–4.

Section 5 of the Act provides that "the Attorney General may accept an [AVC] ... from any person who has engaged or was about to engage" in a prohibited practice. 73 P.S. § 201–5. Section 5 mandates that the AVC be in writing and be filed with the court. *Id.* It also authorizes the AG, at any time, to open any "matters thus closed ... for further proceedings in the public interest pursuant to section 4 [which authorizes the AG to bring actions to restrain prohibited acts]." *Id.* Section 8 provides for civil penalties up to $5,000.00 for each violation of an AVC. 73 P.S. § 201–8. Section 8 specifies that:

[f]or purposes of this section the court ... in which the [AVC] is filed shall retain jurisdiction, and the cause shall be continued; and, in such cases, the [AG] ... may petition for recovery of civil penalties and any other equitable relief deemed needed or proper.[10]

8. Under Rule 1007 of the Rules of Civil Procedure, a plaintiff may commence a civil action by filing either a praecipe for a writ of summons or a complaint. The Rules do not envision commencing an action by way of a petition for a rule to show cause. *Hartmann v. Peterson,* 438 Pa. 291, 293, 265 A.2d 127, 128 (1970). As a responsive pleading, a defendant may file a counterclaim within an answer to the complaint. See Pa. R.C.P. 1031(a). Because the existence of a counterclaim is predicated upon the filing of a complaint which properly institutes a civil action, the counterclaim was not an appropriate response to Parks's Rule to Show Cause.

9. *See Commonwealth v. Monumental Properties, Inc.,* 459 Pa. 450, 460, 329 A.2d 812, 817 (1974) ("Since the [Act] was in relevant part designed to thwart fraud in the statutory sense, it is to be construed liberally to effect its object of preventing unfair or deceptive practices.").

10. In *Commonwealth v. Ted Sopko Auto Sales and Locator,* 719 A.2d 1111, 1114 (Pa. Cmwlth.1998), this Court held that a trial

court had authority under the Act to order a forfeiture of a vehicle sales license for violating an AVC. The salesperson argued that, under Section 4 of the Board of Vehicles Act, Act of Dec. 22, 1983, P.L. 306, *as amended,* 63 P.S. § 818.4, the Board of Vehicle Manufacturers, Dealers and Salespersons had the exclusive authority to suspend or revoke a license, not a trial court. This Court held that the trial court's authority under the Act did not encroach upon the Board's authority. In doing so, the Court seemed to analogize the AVC to an order of court; however, the Court did not intend to declare unequivocally that an AVC is an order of court. Section 5 of the Act only requires the AVC to be *filed* with the trial court; the court *does not either review or approve* the AVC, exercising no judgment. Moreover, under Section 8, the trial court only retains jurisdiction when the AG institutes an enforcement proceeding for a violation of the AVC. Section 8 also clarifies that the trial court has jurisdiction over the enforcement of an AVC, even where, as in *Ted Sopko,* an administrative board may have the statutory authority to suspend or revoke li-

As to the Rule itself, Parks argues that the Rule to Show Cause was the appropriate procedural vehicle because the court already had jurisdiction over the AVC, and this matter is incidental to the AVC. Nonetheless, even if the rule was not the appropriate vehicle, Parks contends the AG waived any objection by failing to file a preliminary objection and by fully participating in the proceedings. Parks also raises several substantive claims, attacking both the AVC and the Act.[11] The AG counters by claiming that because the AVC is a creature of statute, Parks has no legal standing to modify the AVC in court. Under Section 5 of the Act, 73 P.S. § 201–5, *only* the AG may initiate an action to reopen or modify the AVC. Lastly, since the trial court declined to address Parks's remaining claims on the merits, the AG asserts that these issues are not properly before this Court.

▆▆▆▆ A rule to show cause is an ex parte procedure, "directing an adverse party to show cause why an action should not be taken." *Rusbarsky by Rusbarsky v. Rock*, 324 Pa.Super. 28, 471 A.2d 107, 108 (1984). It is auxiliary in nature, based on an existing controversy, and may not substitute for original process. *Id.* Also, the rule's effect is prospective, permitting the adverse party to contest the rule after a court enters the rule. *Pilawa v. Department of Environmental Protection*, 698 A.2d 141, 144 (Pa.Cmwlth.1997). After the parties are given notice and opportunity to be heard, the court may discharge the rule or make it absolute, depending largely on the particular facts of the case. *Plank v. Monroe County Tax Claim Bureau*, 735 A.2d 178, 184–85 (Pa.Cmwlth.1999).

In *Rusbarsky*, the Superior Court held the appellant's petition for a rule to show cause improperly attempted to modify a signed release. The appellant entered into a settlement and signed release involving a medical malpractice claim. *Rusbarsky*, 471 A.2d at 108. By seeking to modify the release through a rule to show cause, the appellant effectively challenged the contract itself and any future rights of the parties. *Id.* The Court found the appellant's petition had "no basis in an actual controversy" and refused to render a decision affecting possible contractual rights in the future. *Id.*

Here, as in *Rusbarsky*, Parks's Rule to Show Cause is not the proper vehicle to amend the AVC. Parks petitioned for a Rule to Show Cause why the AVC should not be modified to allow him to maintain

censes. However, because the trial court does not have any involvement in the content of the AVC, as the trial court merely functions as a repository for the AVC until such time as enforcement becomes necessary, the Act does not convert the AVC into an order of a court. *See Blue Comet Diner v. Pennsylvania Human Relations Commission*, 905 A.2d 1058, 1064 (Pa.Cmwlth.2006) (holding a settlement agreement between Commission staff and the employer was not equivalent to a consent order because the Commission never formally approved it, such that it lacked the "imprimatur of the Commissioners").

11. Regarding the AVC itself, Parks claims the permanent prohibition amounts to an unreasonable restriction, rendering the AVC unconscionable. According to Parks, the AG must enforce the AVC uniformly, whereas here, Parks is subject to a lifetime prohibition in the face of three individuals who claimed less than $3,000.00 in damages from Parks. Also, Parks insists the court may judicially modify the AVC, much like a traditional contract subject to the unconscionability doctrine. Parks argues the AG does not have statutory authority to enter an AVC that requires an individual to permanently disengage from lawful employment. Finally, because the Act fails to provide any specific scope to the enforcement powers of the AG, Parks asserts the Act amounts to an unconstitutionally vague statute that invites arbitrary enforcement, rendering the Act and its sanctions unconstitutional.

his license, essentially to modify his signed agreement which had been filed in 1987. Under Section 5, upon the filing of the signed AVC, the matter between the AG and Parks was "closed." Section 5 authorizes the AG to reopen matters so closed for further proceedings in the public interest pursuant to Section 4 (restraining prohibited acts). Otherwise, the matter remains closed unless there are enforcement proceedings under Section 8. Parks is attempting to utilize a rule to show cause in a matter that has been closed for nearly two decades. Contrary to Parks's assertions, the AG did not waive this issue because, in its Answer with New Matter, the AG specifically argued that Section 5 only permits the AG to open the AVC once closed. (AG's Answer at 3, R. at 3.) The AVC is similar to a settlement agreement where parties forgo litigation in exchange for consideration. Just as in *Rusbarsky,* where the Court disallowed use of the rule to modify a signed release and settlement, the AVC similarly cannot be modified by a rule to show cause.

Furthermore, Section 8 does not appear to authorize the alleged violator of the Act to modify an AVC at will. It provides that, "for the purposes of this section [regarding civil penalties and enforcement]," the court in which the AVC is filed retains jurisdiction, and "in such cases," the *AG* may petition for penalties or other relief. 73 P.S. § 201–8(a). The predicate for judicial involvement appears to be the filing of a petition for recovery of penalties or equitable relief. In other words, the matter previously closed must be affirmatively reopened. Although the AG argues that only the AG may file a petition, the merits

of that contention are not clear, and we need not decide it here.[12] The only issue before us is whether the trial court was correct that a rule to show cause is not the appropriate procedure. In this instance, the rule is not the appropriate vehicle because it can be used only as an auxiliary to an existing controversy, not here where there is no open controversy before the court. Accordingly, we must affirm.

### ORDER

NOW, November 15, 2006, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby **AFFIRMED.**

---

12. At oral argument, counsel for the AG suggested alternative avenues Parks could have pursued in order to challenge the underlying AVC. While we decline to express an opinion as to the merits of any one of them, these suggested alternatives include: (1) invoking this Court's original jurisdiction for declaratory relief; (2) contacting the AG to renegotiate and modify the AVC *before* violating it; or (3) raising the substantive challenges to the AVC as defenses to any enforcement action brought by the AG in common pleas court.