**In Re: FIRST BAPTIST CHURCH OF SPRING MILL.**

**Appeal of: First Baptist Church of Spring Mill.**

Commonwealth Court of Pennsylvania.

Argued Feb. 7, 2011.

Decided June 10, 2011.

---

Steven B. Barrett, Lansdale, for appellant.

Claudia M. Tesoro, Senior Deputy Attorney General, Philadelphia, for appellee Commonwealth of Pennsylvania.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, and KELLEY, Senior Judge.

OPINION BY President Judge LEADBETTER.

First Baptist Church of Spring Mill (Church), a nonprofit corporation located at 80 Cedar Grove Road, Conshohocken, Pennsylvania, appeals from the order of the Court of Common Pleas of Montgomery County, Orphans' Court Division that, *inter alia,* disapproved the proposed payment of the substantial portion of proceeds of the sale of its property to its pastor, David M. Clinger (Rev. Clinger). The Church sold the property under its plan to dissolve itself pursuant to the Nonprofit Corporation Law of 1988 (Nonprofit Corporation Law), 15 Pa.C.S. §§ 5101–6145. We quash the Church's appeal as taken from a non-appealable interlocutory order.

The Church, established in 1902, has been operated as an independent church. On April 21, 2009, the Church filed a peti-

tion titled, "Petition for the Approval of Employee Compensation and the Distribution of the Assets of a Nonprofit Corporation, Pursuant to 15 P[a.] C.S.[] [§§] 5976(b), 5976(c) and 5547(b) in Anticipation of Dissolution and Distribution of Assets to 501(c)(3) Entities." The Church alleged that it had adopted a plan to dissolve itself due to decreased membership and financial difficulties and that it had sold its real property and received a net amount of $691,506.46. The Church proposed to distribute the proceeds of the sale as follows: $635,000 to Rev. Clinger for his service for the past ten years; $1035 to Kenneth A. Berg, Ph.D. for his maintenance work ($30 an hour); $8400 to Dr. Berg's wife, Shelley Berg, for her service as a music director ($20 an hour); and the remaining proceeds to nonprofit entities and individuals. The Church averred that it "owe[d] its pastor and other employees compensation for periods of time when they were uncompensated due to the church's financial struggles." Petition, ¶ 7; Certified Record, Item No. 16.

In an answer and new matter filed as *parens patriae* through the Attorney General, the Commonwealth objected to the petition. It alleged that the Church failed to seek the court's approval of the sale of its assets, and that by voting to approve the compensation package, Rev. Clinger and the other board members of the Church violated a fiduciary duty imposed by Section 5712(a) of the Nonprofit Corporation Law, 15 Pa.C.S. § 5712(a), and engaged in self-dealing to inure benefits to private individuals. The parties agreed that a separate hearing would be held on the distribution of the Church's remaining assets to the nonprofit entities and individuals. At the beginning of the hearing held on March 3, 2010 on the proposed compensation package, the Commonwealth advised the trial court of its decision not to object to the proposed payment to Dr.

Berg and his wife. The parties presented the following evidence at the hearing.

In 1999, Rev. Clinger became the Church's permanent pastor at a starting weekly salary of $150, out of which $90 was treated as a non-taxable housing allowance. He subsequently received periodic salary increases and, eventually, his entire salary was treated as a housing allowance. He was also paid separately for his maintenance work. As of 2008, his annual salary was $17,930. There was no written employment agreement between the Church and Rev. Clinger. Since he graduated from the seminary in 1987, he has also worked full-time first for Hechinger's and then for Home Depot. As of the hearing, he was earning $19.40 an hour from Home Depot.

Dr. Berg, who had known Rev. Clinger since 1985, joined the Church in 2003 and became a member of the Church's board. At the informal board discussion in January 2006, Rev. Clinger, his wife, Lynn Clinger, and Dr. Berg "agreed that [Rev. Clinger] should be compensated in the form of Back pay & some type of retirement benefits in the event the church dissolves." Reproduced Record (R.R.) at 17a. In March 2007, thirteen members of the Church's congregation unanimously approved the revision to the Church's 1998 constitution, as proposed by Rev. Clinger. Article XII, Section 4.C of the constitution was revised to provide that "[i]n the event of the dissolution of this corporation, all of its debts shall be fully Satisfied, *including any compensation and benefits due to its Pastor.*" R.R. at 186a (emphasis added). Article VII, Section 8 was also revised to include the pastor as a member of the Church's board. In addition, the pastor was no longer required to withdraw from a business session when he was the subject of the discussion. Article VII, Section 2.F. Rev. Clinger's nomination of his son, John

Clinger, to a trustee position of the Church was also approved.

At the March 2008 annual congregational meeting, eight voting members of the Church, including Rev. Clinger, his wife, his two sons, Dr. Berg and Dr. Berg's wife, voted to sell the Church's real property. They also adopted a motion of Rev. Clinger's son, Jared Clinger, to "compensate" Rev. Clinger for his past service after the sale of the Church's property. R.R. at 22a. The committee formed to determine the amount of compensation for Rev. Clinger proposed to pay him up to $635,000. Between 1999 and 2008, the Church's annual income ranged from $26,474 to less than $35,000.

On July 20, 2008, Rev. Clinger, his wife and his son signed an agreement to sell the Church's real property to Disciple Community Church of Philadelphia for $750,000. A week later, six remaining voting members, the four Clingers and the Bergs, unanimously voted to dissolve the Church and approved the compensation package for Rev. Clinger and the Bergs. After receiving a net amount of $691,506.46 from the sale of the real property on March 27, 2009, the Church filed the instant petition seeking approval of, *inter alia,* the proposed payment of $635,000 to Rev. Clinger. The Church's vocational expert, Donald E. Jennings, Ed. D., stated in his report that the annual salary and benefits for a full-time pastor in the Philadelphia area with a nine-year experience at a church with fewer than 100 members ranged from $38,726 to $46,739.

The trial court phrased the issue to be decided as "whether the claim for compensation by David Clinger is a legal debt of the church." Trial Court's April 26, 2010 Opinion at 12. The court concluded that Rev. Clinger's claim for compensation for his past service would be unenforceable under contract law requiring a contract to be supported by a legal consideration to be valid. The court determined that a payment of additional sums to Rev. Clinger would constitute a gift, which would be inconsistent with the charitable purposes of the Church. The trial court authorized the Church's board to pay $1035 to Dr. Berg, $8400 to Dr. Berg's wife and $22,500 to Rev. Clinger to cover the costs of storing the Church's records for ten years. The court also authorized the board to pay legal fees and witness fees. The Church's appeal to this Court followed.

The Church argues that the proposed payment to Rev. Clinger is consistent with its charitable purposes. The Church asserts that its members desired to compensate Rev. Clinger appropriately and that the Church's constitution also expresses a desire to compensate him adequately. The Church also cites the provision of its revised constitution requiring payment of all debts, including any compensation and benefits owed to the pastor, upon dissolution.

 Before addressing the merits of the Church's appeal, we will consider the Commonwealth's argument that the appeal should be quashed as an appeal from a non-appealable interlocutory order. The Commonwealth submits that the Church filed the petition in anticipation of the distribution of assets and its dissolution and that the court's order addressing only the compensation issue is not an appealable final order. The Church responds that it only sought the court's approval of the proposed compensation package in the petition and that the court's supervision over a final distribution of the Church's assets and its dissolution "is merely administrative housekeeping[ ] and does not constitute an outstanding claim that is undecided." Church's Reply Brief at 5. The appealability of the trial court's order is a ques-

tion of law subject to our plenary review. *Commonwealth v. Auto Mart, Inc.,* 910 A.2d 171 (Pa.Cmwlth.2006).

An appellate court's jurisdiction generally extends only to review a final order. Pa. R.A.P. 341(a); *Northumberland County Children & Youth Servs. v. Dep't of Pub. Welfare,* 2 A.3d 794 (Pa. Cmwlth.2010). A final order is any order which (1) disposes of all claims and of all parties, (2) is expressly defined as a final order by statute, or (3) is certified as a final order pursuant to Pa. R.A.P. 341(c). Pa. R.A.P. 341(b). The purpose of limiting appellate review to a final order is "to prevent piecemeal determinations and the consequent protraction of litigation." *Hionis v. Concord Twp.,* 973 A.2d 1030, 1034 (Pa.Cmwlth.2009). The consolidation of "all contested rulings into a single appeal provides the [appellate] courts with an opportunity ... to consider a trial judge's actions in light of the entire proceedings below, thereby enhancing the likelihood of sound appellate review." *Rae v. Pa. Funeral Dirs. Ass'n,* 602 Pa. 65, 71, 977 A.2d 1121, 1125 (2009) [quoting Riyaz A. Kanji, *The Proper Scope of Pendent Appellate Jurisdiction in the Collateral Order Context,* 100 Yale L.J. 511, 512–13 (1990)]. In order to determine whether the trial court's April 26, 2010 order is a final order appealable as of right under Rule 341(a), it is necessary to examine the relevant provisions of the Nonprofit Corporation Law.

It is undisputed that the real property sold by the Church was committed to its charitable purposes.[1] Under Section 5547(b) of the Nonprofit Corporation Law, *as amended,* 15 Pa.C.S. § 5547(b), a "[p]roperty committed to charitable pur-

poses shall not ... be diverted from the objects to which it was donated, granted or devised, unless and until the board of directors or other body obtains from the court an order under 20 Pa.C.S. Ch. 61 (relating to estates) specifying the disposition of the property." Section 5976(b), *as amended,* 15 Pa.C.S. § 5976(b), further provides that "[i]f the assets of the corporation include any property committed to charitable purposes, the board of directors or other body shall apply to the court for an order ... specifying the disposition of the property." At any time during the winding-up proceeding, the nonprofit corporation "may apply to the court to have the proceedings continued under the supervision of the court and thereafter the proceedings shall continue under the supervision of the court...." Section 5976(a), *as amended,* 15 Pa.C.S. § 5976(a).

The assets of the corporation established for public worship, such as the Church, are distributed pursuant to Section 5976(c) of the Nonprofit Corporation Law, which provides:

In entering a decree providing for the disposition of the assets of a corporation organized for the support of public worship, the court shall, by its decree, provide for the disposition of the assets of the corporation, either by:

(1) vesting title thereto in such other corporation as may, by its articles, be organized for the purpose of holding title to the real estate held for public worship....

(2) authorizing the sale of such assets by a master or trustee appointed for that purpose and the vesting of the proceeds ... in such body as may be direct-

---

1. The term "charitable purposes" is defined as "[t]he relief of poverty, the advancement of education, the advancement of religion, the promotion of health, governmental or municipal purposes, and other purposes the accomplishment of which is beneficial to the community." Section 5103 of the Nonprofit Corporation Law, *as amended,* 15 Pa.C.S. § 5103.

ed by the court, to be held in trust for carrying out the intent and purpose of public worship; or

(3) vesting the title to such assets in any incorporated or unincorporated body designated by the petitioners for the same uses and trusts as the assets were theretofore held by the dissolved corporation.

After all of liabilities have been discharged and remaining assets have been distributed, the nonprofit corporation must file an article of dissolution with the Department of State, pursuant to Section 5977(a), *as amended,* 15 Pa.C.S. § 5977(a).

■ In this matter, the Church voluntarily decided to dissolve due to the financial difficulties. A nonprofit corporation that has decided to voluntarily dissolve itself must first convert all of its corporate assets into cash and use the cash to discharge all of its liabilities. Section 5975(c) of the Nonprofit Corporation Law, *as amended,* 15 Pa.C.S. § 5975(c). The Church claimed that it owed Rev. Clinger compensation for his past service and sought approval of the proposed payment from the proceeds of the sale of its real property. The trial court's April 26, 2010 order disposing of the Church's proposed discharge of the alleged debts was just the first phase of the court's supervision over the Church's predissolution disposition, distribution of assets and dissolution. The parties agreed that the distribution of the Church's remaining assets would be determined later after a separate hearing. Because the voluntary dissolution process requires further proceedings and is subject to the court's supervision under the Nonprofit Corporation Law, the April 26, 2010, order was not a final order appealable as

of right under Rule 341(a). *See also In re Estate of Borkowski,* 794 A.2d 388 (Pa.Super.2002) (the order of the orphans' court directing the administrator to sell the decedent's real estate was a non-appealable interlocutory order because the estate from which the sale would be carried out remained under administration).

The Pennsylvania Orphans' Court Rule 7.1(a) provides that "a party may file exceptions to any order, decree or adjudication which would become a final appealable order under Pa.R.A.P. 341(b) [definition of a final order] or Pa.R.A.P. 342 following disposition of the exceptions." Rule 342 provides:

An order of the Orphans' Court Division making a distribution, or determining an interest in realty or personalty or the status of individuals or entities, shall be immediately appealable;

(1) upon a determination of finality by the Orphans' Court Division, or

(2) as otherwise provided by Chapter 3 of these rules [Rules 301–342].

■ Rule 341(c) provides that "the trial court or other governmental unit may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case." The Church did not seek an order making the trial court's April 26, 2010 order final. In addition, an order approving or disapproving the nonprofit corporation's predissolution disposition of property is not listed in Pa. R.A.P. 311 as one of the interlocutory orders appealable as of right. The Church also did not seek permission to appeal an interlocutory order pursuant to Rule 312.[2] Nor

---

2. An appellee's failure to file an objection to the court's appellate jurisdiction "within such time as may be specified by general rule" operates to perfect appellate jurisdiction, un-

less the appellate court orders otherwise. Section 704 of the Judicial Code, 42 Pa.C.S. § 704. Under Pa. R.A.P. 741(a), the appellee is required to file an objection to the appellate

does the Church argue that the trial court's order constitutes a collateral order appealable as of right under Rule 313(a).[3]

Accordingly, the Church's appeal is quashed as an appeal from a non-appealable interlocutory order.

## ORDER

AND NOW, this 10th day of June, 2011, the appeal filed by First Baptist Church of Spring Mill in the above-captioned matter is hereby QUASHED.

court's jurisdiction "on or prior to the last day ... for the filing of the record" to prevent appellate jurisdiction from being perfected. In this matter, the Commonwealth raised its objection to this Court's jurisdiction in its brief. The rule providing for a waiver of objections to appellate jurisdiction does not apply, however, where, as here, the appellant has "attempt[ed] to take an appeal from an interlocutory order which has not been made appealable by Rule 311 (interlocutory appeals as of right) or pursuant to Chapter 13 (interlocutory appeals by permission)." Rule 741(b)(2).

3. A "collateral order" is "an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question present-ed is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa. R.A.P. 313(b). Suffice it to note that the trial court's order is directly related to, not separate from, the court's supervision over the Church's predissolution disposition and distribution of its assets and dissolution. The order determined the size of the remaining assets to be distributed to the nonprofit entities and individuals. In addition, the challenge to the order will not be "irreparably lost and remained unresolved" by deferring our review because the order can be reviewed after the trial court enters final judgment in this voluntary dissolution proceeding. *Northumberland County Children & Youth Servs.,* 2 A.3d at 798.